A02A0740. HAPPOLDT v. KUTSCHER.
A02A0741. HAPPOLDT et al. v. KUTSCHER.
(567 SE2d 380)

PHIPPS, Judge.

The above-styled cases are appeals of summary judgment in personal injury and wrongful death actions arising from a vehicular collision at the intersection of a subdivision road and a county road. In each case, the subdivision review officer of Monroe County, John Kutscher, was named as one of multiple defendants. The plaintiffs in both cases asserted that improper construction of the subdivision road caused the county road to wash out and thereby led to the collision. They claimed that the subdivision road was constructed improperly due to Kutscher's negligence in failing to take enforcement action to ensure compliance with county road construction standards.

The collision occurred at the intersection of North Pointe Subdi-

---

vision Road and Pate Road in Monroe County. James Happoldt was driving west on Pate Road. His sister, Julie Happoldt, was seated in the rear of his car. Contemporaneously, Delores Taylor was driving east on Pate Road. The Happoldt vehicle spun out of control and collided with the Taylor vehicle, causing the death of Julie Happoldt and the infliction of serious injuries upon James Happoldt.

In Case No. A02A0740, James Happoldt sued Kutscher and others for personal injuries. In Case No. A02A0741, John Happoldt and David Buice, as administrators of the estate of Julie Happoldt, sued Kutscher and others for Julie Happoldt's wrongful death. We will refer to all plaintiffs in both cases as "Happoldt."

Happoldt's theory was that as the Happoldt vehicle approached the subdivision road, its right front tire left the paved surface of the road and dropped into a rut created by a washout, thereby causing the vehicle to spin out of control. According to Happoldt, the washout was caused by storm water runoff being improperly diverted from North Pointe Subdivision Road onto Pate Road, rather than into ditches along the Pate Road right-of-way. Happoldt claimed that by failing to inspect North Pointe Subdivision Road at its bisection with Pate Road both before and after its construction, Kutscher breached ministerial duties imposed on him by the Monroe County Subdivision Ordinance and Road Standards (referred to as the "Monroe County ordinance," the "county ordinance" and the "ordinance").

The trial court awarded summary judgment to Kutscher in both cases under the doctrine of official immunity on grounds that he was charged with negligence in the performance of discretionary rather than ministerial functions. The court found no connection between Kutscher's duties and the washout of the road. Happoldt appeals. We find evidence that Kutscher breached certain ministerial duties. But based on the record before us, we find no evidence of a causal relationship between breach of those ministerial duties and the road conditions alleged to have caused the collision. Therefore, we affirm.

> In reviewing the grant or denial of summary judgment, this court conducts a de novo review of the evidence. [Cit.] As the movant for summary judgment, the county employee[ ] had the burden to show there was no genuine issue of material fact for trial and that the undisputed facts, viewed in the light most favorable to the plaintiffs, warranted judgment as a matter of law. [Cit.][1]

1. "A suit against a public officer acting in his or her official capacity will be barred by official immunity unless the public officer

---

[1] *Phillips v. Walls*, 242 Ga. App. 309, 310 (529 SE2d 626) (2000).

(1) negligently performed a ministerial duty, or (2) acted with actual malice or an actual intent to cause injury while performing a discretionary duty. [Cits.]"[2] "A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty."[3] "A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed."[4] "Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty. [Cit.]"[5]

The Monroe County ordinance imposes on the subdivision review officer a duty to make field inspections and supervise work being performed during the construction and installation of "public improvements"[6] required by the ordinance. The purpose of these inspections is to ensure conformance to the rules and regulations of the ordinance. Before a final subdivision plat can be approved by the county board of commissioners, the review officer is generally required to certify that the developer has completed the construction and installation of "the streets, drainage, utilities and other improvements in accordance with the laws and specifications of Monroe County."

In *Wanless v. Tatum,*[7] we held that an established policy requiring employees of the county's roads and drainage department to record and investigate citizen complaints concerning unsafe traffic conditions created a ministerial duty on the part of the employees to perform those tasks. Similarly, we concluded in *Phillips v. Walls*[8] that the act of following an established policy requiring county employees to conduct an inspection after receiving complaints concerning visual obstructions to traffic control devices was ministerial.[9]

Monroe County has established a policy requiring its subdivision review officer to inspect subdivision construction sites and to review

---

[2] (Emphasis omitted.) *Lincoln County v. Edmond,* 231 Ga. App. 871, 874 (2) (501 SE2d 38) (1998).

[3] (Citations and punctuation omitted.) *Stone v. Taylor,* 233 Ga. App. 886, 888 (2) (506 SE2d 161) (1998).

[4] (Citation, punctuation and footnote omitted.) *Todd v. Kelly,* 244 Ga. App. 404, 406 (1) (535 SE2d 540) (2000).

[5] *Coffey v. Brooks County,* 231 Ga. App. 886, 889 (2) (b) (500 SE2d 341) (1998).

[6] A road is a public improvement. See Black's Law Dictionary (4th ed. rev. 1968), p. 890.

[7] 244 Ga. App. 882 (536 SE2d 308) (2000).

[8] Supra, 242 Ga. App. at 310 (1).

[9] Compare *Woodard v. Laurens County,* 265 Ga. 404, 406 (2) (456 SE2d 581) (1995) (action by county employees in establishing procedures for discovering and removing visual obstructions to stop sign is a discretionary function).

subdivision plats to ensure compliance with all requirements of the county ordinance. Therefore, Kutscher's duty to perform these tasks was ministerial. There is evidence of breach of duty, as Kutscher himself testified that he failed to inspect the subdivision road to determine compliance with any ordinance provision other than the one relating to right-of-way width requirements and that he did not give his approval to the final plat for North Pointe Subdivision.

We do conclude, however, that under the doctrine of official immunity Kutscher retains an immunity from liability only to the extent that the actions he was required to take during the course of the inspections were discretionary in nature. This conclusion finds support in *Joyce v. Van Arsdale*,[10] wherein the county road superintendent had been instructed by the board of commissioners to close a defective bridge. Although the superintendent was given discretion in selecting the method for performing the work, we held that he was not entitled to immunity because the act of closing the bridge was ministerial.[11] In *Joyce*, we recognized that "[t]he single overriding factor is whether the specific act from which liability arises is discretionary or ministerial."[12]

In this case, "the specific act from which liability arises" is not Kutscher's appearance at the subdivision site to conduct inspections. Liability must arise from the acts Kutscher was required to perform during the inspections. This is shown by *Kordares v. Gwinnett County*,[13] in which it was held that county employees who had generally inspected county bridges once or twice a year could not be held liable for failure to conduct subsurface inspections in the absence of any policy requiring subsurface inspections.

Happoldt charges Kutscher with negligence based on assertions that (1) North Pointe Subdivision Road was not constructed or maintained according to storm water control measures required by the county ordinance, (2) construction of the subdivision road was not in compliance with grading requirements set forth in the ordinance, and (3) the rights-of-way of Pate and North Pointe Subdivision Roads were not maintained after construction.

As to drainage, the Monroe County ordinance prohibits residential platting of land that is subject to "improper drainage" and requires that an "adequate" drainage system based on at least ten-year rainfall frequency be provided for the proper drainage of all sur-

---

[10] 196 Ga. App. 95 (395 SE2d 275) (1990).
[11] See also *Lincoln County v. Edmond*, supra, 231 Ga. App. at 874 (2) (county road superintendent had ministerial duty to remove tree blocking county road, although county policy granted him discretion to choose manner in which removal would be performed).
[12] (Citations and punctuation omitted.) 196 Ga. App. at 96.
[13] 220 Ga. App. 848 (470 SE2d 479) (1996).

face water. Because the subdivision review officer was thus required to exercise personal deliberation and judgment in determining whether these standards have been met, his determination was discretionary in nature.[14] Therefore, Kutscher cannot be held liable for negligent performance or nonperformance of these duties. As to failure to maintain rights-of-way after construction, Happoldt has failed to show that Kutscher was under any duty to conduct post-construction inspections.

As to grading, however, the ordinance provides that streets must contain maximum horizontal grades between specified percentages depending on the type of street, that changes in grade must be connected by vertical curves of certain minimum lengths, and that the subdivision developer must grade streets to their full width. These instructions are sufficiently clear and definite as to call for exercise of a ministerial duty, so Kutscher does not enjoy official immunity from any liability resulting from his failure to perform that duty.

2. Happoldt has presented no evidence, however, that the accident resulted from Kutscher's alleged failure to ensure that the subdivision road complied with the grading requirements in the county ordinance.

Happoldt submitted an affidavit from Herman Hill, a professional engineer, who opined that Kutscher was negligent "in allowing the construction of the subdivision entrance which directed the storm water along the Pate Road pavement edge and thus developed and amplified the edge drop off problem at the location." Hill further stated that the failure of Kutscher and another defendant to "require the proper construction of the [subdivision] road so as to prevent the washing out of the pavement edge on Pate Road . . . constituted professional negligence which resulted in the subject accident." Finally, Hill concluded that Kutscher failed "to comply with generally accepted engineering standards . . . and to properly inspect, operate, maintain and repair this subdivision road."

Thus, while Hill blamed the washout on inadequate storm water drainage, an "edge drop off problem" at the intersection, and a general lack of "proper construction" of the subdivision road, his affidavit did not say that the subdivision road failed to meet the grading requirements in the county ordinance or that any such failure caused the washout. In fact, Hill's affidavit did not even mention "grading"

---

[14] See *Stone v. Taylor*, supra, 233 Ga. App. at 888 (2) (act of county commissioner, in inspecting county road and deciding that no modifications needed to be made to shoulders of the road, held to be discretionary); *Peele v. Dobbs*, 196 Ga. App. 684 (396 SE2d 600) (1990) (act of county building inspector, in inspecting and approving construction of chimney in such a way as to impose a fire hazard, held to be discretionary).

or refer to any specific applicable grading standards, whether contained in the county ordinance or elsewhere. And even if the affidavit's use of the term "drop off" could be construed as a reference to inadequate grading, the affidavit does not explain whether that inadequacy resulted from a lack of compliance with the ordinance or from some other source. Finally, Hill's affidavit stated that the dropoff occurred on Pate Road, for which Kutscher had no responsibility. This suggests that any grading problem was associated with the main road, not the subdivision road.

In the absence of any evidence linking the washout to the subdivision road's asserted lack of compliance with the county ordinance's grading requirements, the trial court properly granted summary judgment to Kutscher on the issue of proximate cause.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JUNE 24, 2002.

*Lovett, Cowart & Ayerbe, L. Robert Lovett, Paul R. Ayerbe, Bridgette M. Cooper,* for appellants.

*Misner, Scott & Grate, Donald J. Grate, Tracey K. Dewrell,* for appellee.