A02A1014. CLARK v. PRISON HEALTH SERVICES, INC. et al.
A02A1015. SIMPSON et al. v. CLARK.
(572 SE2d 342)

ELLINGTON, Judge.

Sharon Ann Clark's 17-year-old son, Ronald Smith, committed suicide while detained in the Chatham County jail. Clark filed this wrongful death suit against Chatham County, the sheriff, six jail employees, and the jail's medical care provider. The trial court entered two orders, one granting a motion to dismiss the medical care provider, Prison Health Services, Inc. ("PHS"), and one granting in part the remaining defendants' motion for summary judgment, and these appeals followed.

A brief overview of the relevant facts is necessary for a detailed description of the claims and rulings at issue. Viewed in the light most favorable to Clark, as the nonmovant, the record reveals the following facts: On November 10, 1996, Smith drove a stolen car from South Carolina into Georgia and was arrested in Chatham County. Under contract with the county, PHS provided medical services at

the jail, including medical screenings of all new detainees. Upon Smith's arrival at the jail, Cornelius Jones, a licensed practical nurse employed by PHS, performed a medical screening, including an assessment of Smith's mental health status. Based on Smith's statements that he had been hospitalized for violent behavior within the preceding year and had thought about committing suicide within the preceding three days, Jones concluded Smith needed to see a mental health counselor.

As a result of his assessment of Smith's mental health status, Jones completed a mental health referral form. Jail policy required the booking nurse to give mental health referral forms to the booking sergeant on duty. Jail policy required that the booking sergeant notify the shift commander of any mental health referral. The shift commander would then classify the referral as either an emergency, resulting in a mental health counselor interviewing the detainee immediately, or nonemergency, in which case the detainee would be interviewed within three days. Larry C. Ransom, the booking sergeant that night, denied receiving the mental health referral form or any other communication from Jones about Smith's mental health status.

On November 11, 1996, the morning after Smith's arrest, Henry C. Mallory, a classification officer, interviewed him and filled out a classification profile which did not reflect any mental health concerns. Mallory initially assigned Smith to the general population, but, based on erroneous information that another inmate might harm Smith, Mallory placed him on cell restriction or "lockdown," confining him alone in his cell nearly continuously.

On November 13, 1996, Clark called David Morgan, the mental health counselor responsible for Smith's unit, and left messages expressing her fear that Smith would hurt himself. Morgan never spoke with Clark and never interviewed Smith, and Smith received no additional mental health assessment or treatment. On the morning of November 15, less than five days after his arrest, Smith hanged himself in his cell.

Clark filed suit against the county, Al St. Lawrence (the sheriff), Gary Blake (the jail administrator), Ransom, Mallory, Morgan, and Stephen S. Simpson and Douglas Simmons (the two floor officers on the unit the morning Smith died), in their official and individual capacities (collectively "the county defendants"), and against PHS. Clark alleged that the county defendants and PHS failed to provide mental health care to Smith, failed to properly classify Smith, failed to take precautions for the prevention of suicide, and failed to adequately train employees attending to pretrial detainees such as Smith. In addition to claims based in negligence, Clark asserted claims for intentional infliction of emotional distress.

The trial court dismissed Clark's claim against PHS after finding that the claim was one for professional malpractice and that Clark failed to file a timely expert affidavit setting forth the alleged negligent acts and the factual basis for the malpractice claim, as required by OCGA § 9-11-9.1. In Case No. A02A1014, Clark appeals, contending she asserted a simple negligence claim against PHS, such that OCGA § 9-11-9.1 did not apply. For the reasons discussed in Division 1, infra, we reverse the trial court's order dismissing Clark's claim against PHS.

In a separate order, the trial court granted in part and denied in part the county defendants' motion for summary judgment. The trial court granted the motion for summary judgment as to Chatham County and the individual county defendants in their official capacities, finding that Clark's claims were barred under the doctrine of sovereign (governmental) immunity. The trial court also granted summary judgment in favor of St. Lawrence, Blake, and Mallory in their individual capacities, finding that their alleged negligence occurred in the performance of discretionary functions and that they were therefore entitled to official immunity. As to these rulings, Clark appeals only the trial court's finding that Mallory was entitled to official immunity. For the reasons discussed in Division 2, infra, we reverse the summary judgment order as to Mallory.

In the summary judgment order, the trial court also found the alleged misconduct did not rise to the level of outrageousness required for a claim for intentional infliction of emotional distress and accordingly granted the county defendants' motion for summary judgment as to that claim. Clark appeals this ruling; for the reasons discussed in Division 3, infra, we affirm the trial court's summary judgment order as to Clark's claim for intentional infliction of emotional distress.

Finally, the trial court found that Clark's negligence claims against Ransom, Morgan, Simpson, and Simmons in their individual capacities occurred in the performance of ministerial functions and were therefore not barred by the doctrine of official immunity. Accordingly, the trial court denied the motion for summary judgment as to these claims. Ransom, Morgan, Simpson, and Simmons cross-appeal this finding in Case No. A02A1015. For the reasons discussed in Division 4, infra, we affirm the trial court's denial of summary judgment as to the cross-appellants.

### Case No. A02A1014

### Dismissal Order

1. Clark contends the trial court erred in finding her amended claim against PHS asserted a claim for professional negligence sub-

ject to the affidavit requirement set out in OCGA § 9-11-9.1.[1] Specifically, Clark contends she attributed negligence to Jones' failure to communicate his assessment of Smith to jail personnel according to PHS and county policy. Clark contends this allegedly negligent conduct did not involve the exercise of Jones' professional judgment, and, therefore, the claim was one for simple negligence not subject to the affidavit requirement of OCGA § 9-11-9.1.

On appeal, an order dismissing a claim pursuant to OCGA § 9-11-9.1 for failure to attach an expert affidavit to a claim for professional malpractice

> [shall] not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

(Citation omitted.) *Peterson v. Columbus Med. Center Foundation*, 243 Ga. App. 749-750 (533 SE2d 749) (2000).

In her complaint, Clark alleged PHS, through its employee, "negligently and carelessly failed to deliver the mental health evaluation form on Ronald Smith to the officer at the booking desk according to the policies and procedures of the Chatham County Sheriff's Department and [PHS]." "Whether an action alleges professional malpractice or simple negligence depends on whether the professional's alleged negligence required the exercise of professional judgment and skill." (Citation and punctuation omitted.) *Peterson v. Columbus Med. Center Foundation*, 243 Ga. App. at 754 (2). "A professional negligence or malpractice action calls into question the conduct of the professional in his area of expertise. Administrative, clerical, or routine acts demanding no special expertise fall in the realm of simple negligence." (Citations omitted.) *Mendoza v. Pennington*, 239 Ga. App. 300 (1) (519 SE2d 715) (1999).

---

[1] OCGA § 9-11-9.1 (a) provides:
In any action for damages alleging professional malpractice against a professional licensed by the State of Georgia and listed in subsection (f) of this Code section or against any licensed health care facility alleged to be liable based upon the action or inaction of a health care professional licensed by the State of Georgia and listed in subsection (f) of this Code section, the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim.

In *Peterson v. Columbus Med. Center Foundation*, the complaint alleged that the defendants were negligent through "the administrative nonprofessional functions of [hospital] employees," including "failing to follow adequate policies or procedures regarding the reading, interpretation and communication of medical tests." 243 Ga. App. at 755 (2). Similarly, in this case, Clark alleges Jones was negligent in following jail policy to communicate the result of his medical and mental health assessment of Smith, an action which did not require the exercise of Jones' professional judgment, knowledge, or skill. Taking all well-pleaded material allegations of Clark's pleadings as true, as the trial court was required to do, "the allegations do not disclose with certainty that [Clark] would not be entitled to relief under a theory of simple negligence or that [she] could not possibly introduce evidence to support such a claim." (Citations omitted.) Id. Consequently, the trial court erred in granting PHS's motion to dismiss Clark's negligence claim against PHS.

*Summary Judgment Order*

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "We review the grant or denial of a motion for summary judgment de novo, construing the evidence and all reasonable inferences therefrom in the light most favorable to the nonmovant." (Citation omitted.) *Bell v. Sasser*, 238 Ga. App. 843, 844 (520 SE2d 287) (1999).

2. Clark contends the trial court erred in concluding the actions of Mallory, the classification officer, were discretionary therefore entitling him in his individual capacity to summary judgment under the doctrine of official immunity.

The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity. Qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure.

(Punctuation and footnotes omitted.) *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001).

A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty.

(Punctuation and footnotes omitted.) *Happoldt v. Kutscher*, 256 Ga. App. 96, 98 (1) (567 SE2d 380) (2002).

The trial court concluded that Mallory's actions, specifically, conducting the classification assessment and placing Smith in a general population unit without suicide prevention measures or mental health referral, required the exercise of personal deliberation and judgment. Clark, however, characterizes as negligent Mallory's *later* conduct, specifically, his failure to complete required documentation when he placed Smith in lockdown and his failure to release Smith from lockdown when he realized the assignment had been made in error. Our review of the record reveals that some of Mallory's allegedly negligent actions were governed by clear, definite, and certain procedures or instructions.[2] See *Carter v. Glenn*, 249 Ga. App. 414, 417 (2) (548 SE2d 110) (2001). Accordingly, the trial court erred in

---

[2] For example, Blake, the jail administrator, testified jail policies required, "[o]n protective custody, there would be some documentation which would indicate why." Chatham County Jail Standard Operating Procedure 10.01 (CCJ#10.01) provides: "It is the policy of the Detention Center/Jail that inmates be housed in the least restrictive environment pursuant to the safe and orderly operation of the facility. Segregation will only be used in accordance to the procedures outlined in this policy." CCJ#10.01 also provides, "Inmates placed in Administrative Segregation will receive a written notification stating the reason(s) for placement in Administrative Segregation. Inmates will be requested to sign this notification and a copy will be retained in the inmate file." CCJ#10.01 defines protective custody as, "[a] status of confinement to be used for inmates protection from the general population when no other suitable alternative is available." CCJ#10.01 provides:

An inmate may be placed in Protective Custody by the Classification section; Shift Supervisor or higher authority. . . . Release from protective custody may be authorized when the condition which required protective custody no longer exists. The following persons or groups of persons may effect this reclassification: a. A Classification/Special Classification Committee, b. Jail Administrator.

CCJ#10.01 also provides: "Conditions of Protective Custody shall be the same as those for Administrative Segregation." The jail's General Post Orders provide: "At no time will an officer change the location of an inmate without the approval of the Shift Commander or the Classification Specialist. No officer shall impose any restrictions on an inmate except by the approval of the Shift Commander or as governed by policy and procedures." The jail's Post Orders for Smith's housing unit provide that floor officers shall "[d]ocument any lockdown time given to an inmate in the wing log book as well as on an Inmate Contact Record, Incident Report, and an Inmate Disciplinary Report (if applicable)."

granting Mallory's motion for summary judgment. *Washington v. Dept. of Human Resources*, 241 Ga. App. 319, 322 (2) (526 SE2d 354) (1999).

3. Clark contends the trial court erred in finding the alleged misconduct did not rise to the level of outrageousness required for a claim for intentional infliction of emotional distress.

> Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

(Citation and punctuation omitted.) *Northside Hosp. v. Ruotanen*, 246 Ga. App. 433, 435 (541 SE2d 66) (2000).

Because Clark's claims as to the remaining county defendants are barred under the doctrines of sovereign and official immunity, we consider only the conduct of Ransom, Morgan, Simpson, and Simmons. Reviewing the record in the light most favorable to Clark, we find the conduct in question does not sustain a claim for intentional infliction of emotional distress. The trial court properly granted summary judgment to the county defendants as to this claim. See *Taylor v. Gelfand*, 233 Ga. App. 835, 837 (3) (505 SE2d 222) (1998).

### Case No. A02A1015

4. Ransom, Morgan, Simpson, and Simmons contend the trial court erred in concluding their actions constituted ministerial functions not protected by official immunity.

(a) The trial court concluded that Ransom's alleged negligence, specifically, failing to alert the shift supervisor to a mental health referral from the intake nurse and failing to put a copy of the referral in the counselor's mailbox, constituted a ministerial function. After reviewing the record, we agree that applicable jail policies regarding handling of mental health referrals were "so clear, definite and certain as merely to require the execution of a relatively simple, specific duty," leaving no room for "examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." (Punctuation and footnotes omitted.) *Happoldt v. Kutscher*, 256 Ga.

App. at 98 (1). The trial court properly denied summary judgment. *Carter v. Glenn*, 249 Ga. App. at 417 (2).

(b) The trial court concluded the alleged negligence of the mental health counselor, Morgan, in failing to implement the mental health referral procedure after receiving Clark's telephone messages constituted a ministerial act. We agree. The established jail policies clearly and unequivocally required Morgan, as a mental health counselor, to assess the mental health status of a detainee as soon as practical after receiving a mental health referral such as a communication from a family member suggesting the detainee might harm himself. The trial court properly denied summary judgment. *Wanless v. Tatum*, 244 Ga. App. 882, 884 (536 SE2d 308) (2000); *Lincoln County v. Edmond*, 231 Ga. App. 871, 875 (2) (501 SE2d 38) (1998).

(c) The trial court concluded the alleged negligent acts of Simpson and Simmons, floor officers on the unit where Smith was housed on the morning of his suicide, in failing to follow jail policies concerning inspecting and monitoring of inmates were ministerial acts. We agree that inspecting the cells in the unit according to the prescribed schedule and documenting detainees' location and status required merely the implementation of clear and certain duties, not the exercise of personal judgment. See *Carter v. Glenn*, 249 Ga. App. at 417 (2). The trial court properly denied summary judgment.

*Judgment affirmed in part and reversed in part in Case No. A02A1014. Judgment affirmed in Case No. A02A1015. Smith, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 9, 2002 — ▐▐▐▐▐▐▐▐▐▐▐▐▐

*Kent, Sigman & Bogle, A. Martin Kent, Eugene C. Brooks IV*, for Clark.

*Quillian, Loncon & Edwards, Abda L. Quillian, Hugh M. Worsham, Jr., Emily E. Garrard*, for Prison Health Services, Inc.

*Lee, Black, Hart & Rouse, R. Jonathan Hart*, for Simpson et al.