A03A1098. MIDDLEBROOKS et al. v. BIBB COUNTY et al.
(582 SE2d 539)

ELDRIDGE, Judge.

Joseph V. Middlebrooks ("Middlebrooks") committed suicide while detained in the Bibb County Law Enforcement Center ("LEC"). James J. Middlebrooks filed this wrongful death action as the administrator of the estate and as the surviving son of Middlebrooks against Bibb County, County Board Chairman Larry Justice, Sheriff Robbie Johnson, Major of Corrections Walter Mitchum, Chief Deputy Grant, Captain Clifton Spires, four Bibb County lieutenant sheriffs, four Bibb County deputy sheriffs, and Sandra White, a nurse employed at the Bibb County LEC, to recover for the wrongful death of his father.[1] This appeal arises out of the trial court's order granting summary judgment to all defendants on the grounds of sovereign and official immunity.[2] Finding no error we affirm.

On appeal from the grant of summary judgment,

the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed

---

[1] Plaintiffs initially filed suit in federal court. However, pursuant to a motion filed by defendants, on December 12, 1996, the district court severed the state law claims from the federal claims, and plaintiffs filed this action on June 11, 1997, under the Georgia renewal statute, OCGA § 9-2-61.

[2] Plaintiffs do not enumerate as error the trial court's grant of summary judgment to Nurse White and Lieutenant Smallwood. Additionally, plaintiffs appeal the grant of summary judgment to Bibb County Chairman Justice only to the extent that Bibb County is subject to suit through its Commission Chairman and have not enumerated as error the grant of summary judgment to him in his individual capacity.

in the light most favorable to the nonmoving party, warrant judgment as a matter of law. . . . [T]his Court applies a de novo standard of review and must draw all inferences in favor of the non-moving party.

(Punctuation and footnotes omitted.) *Talbot County Bd. of Commrs. v. Woodall*, 275 Ga. 281 (565 SE2d 465) (2002). See OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed in the light most favorable to plaintiffs, the record reveals the following facts: On August 24, 1993, Middlebrooks was discovered with second and third degree burns at his home. He had allegedly burned down his house after killing his wife. Middlebrooks had cuts on both sides of his neck, slits on both of his wrists, and several puncture wounds in his chest. Middlebrooks was initially transported to Grady Hospital's burn unit and then transferred to Georgia Regional Hospital. Middlebrooks was subsequently transferred to Charter Lake Hospital for psychiatric treatment. In late September 1993, Middlebrooks was booked into the Bibb County LEC on the charge of malice murder.

While incarcerated at the Bibb County LEC, Middlebrooks attempted to harm himself by swallowing a bar of soap. Middlebrooks was transported to the emergency room of the Medical Center of Central Georgia for treatment and then transferred to Central State Hospital in Milledgeville for psychiatric evaluation. Middlebrooks was rebooked into the Bibb County LEC on December 9, 1993, with the notation he was a suicide risk based on his attempt to swallow the bar of soap. Pursuant to the policy of the Bibb County Sheriff's Office for dealing with possible suicidal inmates, he was permanently housed in the booking area in a cell with a barred door, as opposed to a solid door, where he was in open view and could be routinely monitored by personnel working in that area.

On January 9, 1994, Middlebrooks broke his leg, which resulted in his leg being placed in a cast. After his injury, Middlebrooks was allowed to keep a set of crutches in his cell as they were necessary for him to walk. Sometime after 2:00 a.m. on January 14, 1994, Middlebrooks committed suicide by using one of his bed sheets to fashion a tourniquet, which he placed around his neck; using a portion of a crutch he had disassembled, he twisted the bed sheet until he asphyxiated. He, apparently, lay down on the piece of the crutch in order to keep the tourniquet from loosening.

Prior to Middlebrooks' death, the last time any sheriff's office personnel spoke with him was on January 14, 1994, at 2:00 a.m. when he was allowed to use the telephone. At such time, he did not appear to be in any distress and gave no indication he was upset or

contemplating suicide. After he was returned to his cell, several deputies checked on him on numerous occasions by visually looking at him through the barred door, and he appeared to be sleeping with his back to the door. When Middlebrooks placed the tourniquet around his neck, he had positioned himself on his bed with his back to the barred door and had pulled his blanket up over his neck. However, this was Middlebrooks' usual sleeping position because it kept the lights, which were on, out of his eyes. The deputies did not attempt to wake Middlebrooks. When Lieutenant Wheat reported to work at 6:00 a.m. on January 14, 1994, he visually checked Middlebrooks, and he appeared to be sleeping. Lieutenant Wheat visually checked Middlebrooks six to seven times each hour and, each time, assumed he was still sleeping. Middlebrooks' death was not discovered until approximately 9:00 a.m., when Nurse White entered Middlebrooks' cell to dispense his medication. *Held*:

1. There was no error in the trial court's grant of summary judgment to Bibb County.

A 1991 amendment to our constitution provides, "The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). The Supreme Court of Georgia held that sovereign immunity extends to counties under the 1991 constitutional amendment. *Gilbert v. Richardson*, 264 Ga. 744, 747 (2) (452 SE2d 476) (1994). See also OCGA § 36-1-4 ("[a] county is not liable to suit for any cause of action unless made so by statute"). "While OCGA § 42-5-2 (a) imposes the duty and the cost for medical care of inmates in the custody of a county upon the county, such statute did not waive sovereign immunity of the county or its agents and employees." *Howard v. City of Columbus*, 239 Ga. App. 399, 410 (2) (a) (521 SE2d 51) (1999).

However, a county has legislative duty to provide an inmate in its custody and care with medical care. See OCGA §§ 42-5-2 (a); 42-4-4 (a) (2); 42-4-32 (d). As the right to medical care is a fundamental right, it is not discretionary, and therefore, the violation of such right "is *not* subject to either sovereign immunity or official immunity." *Cantrell v. Thurman*, 231 Ga. App. 510, 514 (4) (499 SE2d 416) (1998); *Howard v. City of Columbus*, supra at 411 (2) (b). In this case, there is no evidence that Bibb County breached its duty to provide medical care to Middlebrooks. The evidence is uncontroverted that the Bibb County Sheriff's Department had an oral policy which provided adequate procedures for caring for potentially suicidal inmates. Under such policy, inmates believed to be a suicide risk were to be housed in the booking area of the Bibb County LEC, which was

manned 24 hours per day, in cells with barred doors in order to provide easy observation by deputies working in the area. The policy required that such inmates be routinely monitored and directed that deputies use their discretion in determining the frequency and method of monitoring, and what type of items the inmates were allowed to have in their cells. Under the policy, deputies were provided on-the-job training and taught to exercise their best judgment on a case-by-case basis in making these determinations based on the facts particular to each case. Thus, the trial court's grant of summary judgment in favor of Bibb County must be affirmed.[3]

2. Plaintiffs allege that it was error for the trial court to grant summary judgment to Sheriff Johnson, Chief Deputy Grant, Major Mitchum, Captain Spires, and Lieutenant Pearce in that training, supervision, and adoption of an official policy regarding supervision of suicidal inmates are ministerial functions as opposed to discretionary ones. We disagree.

> The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity. Qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure.

(Citation omitted.) *Clark v. Prison Health Svcs.*, 257 Ga. App. 787, 791 (2) (572 SE2d 342) (2002).

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the exe-

---

[3] While sovereign immunity is not a bar to an action brought pursuant to 42 USC § 1983 for violations of Eighth Amendment rights, plaintiffs have not asserted a § 1983 claim in this Court. See *Howard v. City of Columbus*, supra.

cution of a relatively simple, specific duty. *Happoldt v. Kut-scher*, 256 Ga. App. 96 (567 SE2d 380) (2002).[4]

Id. at 792.

Contrary to plaintiffs' assertion, there was not a "complete lack of policy and training concerning suicidal inmates." As we held in Division 1, the Bibb County Sheriff's Department had an adequate policy concerning the care of inmates believed to be a suicide risk. Further, the evidence is uncontroverted that the employees of the Bibb County LEC were made aware of the policy and received on-the-job training in what was a proper exercise of their personal judgment in making case-by-case decisions on the type and frequency of monitoring and what items should be left in an inmate's cell. Moreover, this Court has consistently held that

> [t]he operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function of the [county] as opposed to a ministerial, proprietary, or administratively routine function. *McDay v. City of Atlanta*, 204 Ga. App. 621 (1) (420 SE2d 75) (1992). Liability may be imposed as a result of the exercise of such a discretionary function only when the acts complained of are done within the scope of the officer's authority and with wilfulness, malice or corruption. Id.

(Citation and punctuation omitted.) *Carter v. Glenn*, 249 Ga. App. 414, 417 (2) (548 SE2d 110) (2001). See also *Harvey v. Nichols*, 260 Ga. App. 187, 191 (1) (a) (581 SE2d 272) (2003); *Bontwell v. Dept. of Corrections*, 226 Ga. App. 524, 527-528 (4) (486 SE2d 917) (1997).

In this case, there was no showing of any conduct by any of these defendants which would amount to wilfulness, malice, or corruption. Therefore, they all are entitled to official immunity as a matter of law. See id.; *Lowe v. Jones County*, 231 Ga. App. 372, 373 (3) (499 SE2d 348) (1998); *McDay v. City of Atlanta*, supra at 621 (1).

3. Plaintiffs allege that the trial court erred in granting summary judgment to Lieutenants Wheat and Gunnels on the basis of official immunity in that providing proper supervision of a suicidal

---

[4] Although in *Edwards v. Dept. of Children &c. Svcs.*, 271 Ga. 890 (525 SE2d 83) (2000); *Brantley v. Dept. of Human Resources*, 271 Ga. 679 (523 SE2d 571) (1999); and *Dept. of Transp. v. Brown*, 267 Ga. 6 (471 SE2d 849) (1996), the Supreme Court has drawn a more narrow definition of discretionary functions in the context of the Georgia Tort Claims Act, the Supreme Court specifically noted in *Brantley* that county employees fall outside the scope of the Georgia Tort Claims Act. See also *Washington v. Dept. of Human Resources*, 241 Ga. App. 319, 322 (2) (526 SE2d 354) (1999).

inmate is a ministerial function. Plaintiffs argue that Lieutenants Wheat and Gunnels failed (1) to inform their subordinates of Middlebrooks' suicidal tendencies, and (2) to give them clear directions on how to monitor them.

In this case, Lieutenants Wheat and Gunnels followed the Bibb County Sheriff's Department's policy of dealing with suicidal inmates. The evidence is uncontroverted that, as each shift came on duty, the officers were made aware that Middlebrooks was being housed in the booking area due to suicidal tendencies and that there was a need to routinely monitor him. Each of the deputies on duty during the morning hours of January 14, 1994, averred that he had been informed that Middlebrooks was housed in the booking area because he was a suicide risk; that Middlebrooks should be routinely monitored; and that the officer should exercise his discretion in determining the frequency and method of monitoring based on Middlebrooks' behavior and the surrounding circumstances. Each of the deputies further averred that he was aware that he should exercise his discretion in a common sense case-by-case basis in determining what items should be taken out of Middlebrooks' cell to insure his safety, taking into consideration what appeared to be a risk to the particular inmate because of his situation.

To the extent plaintiffs allege that Lieutenants Wheat and Gunnels should have established more definite policies that left the deputies without discretion in deciding the method and frequency of monitoring and what items could be left within an inmate's cell, the decision on whether to adopt other or additional requirements was, by policy, left to their personal judgment and was, therefore, discretionary and not ministerial. Further, such failure to adopt other or additional requirements does not amount to wilfulness, malice, or corruption. See *Woodard v. Laurens County*, 265 Ga. 404, 407 (2) (456 SE2d 581) (1995). It follows that the trial court correctly granted summary judgment in favor of Lieutenants Wheat and Gunnels.

4. Plaintiffs allege that the trial court erred in granting summary judgment to Deputies Morgan, Smith, Osgood, and Rachel, since providing proper supervision is a ministerial function.

"Whether the acts upon which liability is predicated are ministerial or discretionary is determined by the facts of the particular case. *Nelson v. Spalding County*, 249 Ga. 334, 336 (2) (a) (290 SE2d 915) (1982)." *Woodard v. Laurens County*, supra at 407 (2).

In this case, the uncontroverted evidence shows that Deputies Morgan, Smith, Osgood, and Rachel followed the policy of the Bibb County Sheriff's Department by routinely monitoring Middlebrooks. On January 14, 1994, Middlebrooks gave deputies no indication he was upset or contemplating suicide. He exhibited no unusual behavior, did not appear upset, was not exhibiting any obvious signs of anxiety,

and appeared to be in good spirits. The uncontroverted evidence further shows that each deputy frequently checked on Middlebrooks during the time in question. Each of these deputies averred that they visually checked on Middlebrooks by looking through the barred cell door numerous times between 2:00 a.m. and 9:00 a.m. and that Middlebrooks appeared to be asleep, due to the unique methods Middlebrooks had used to keep his actions undetected. There is no evidence the deputies failed to comply with the simple, specific duties that were clear, certain, and definite under the policy regarding potentially suicidal inmates and were ministerial in nature.

To the extent plaintiffs allege that the deputies should have checked Middlebrooks more frequently or should have gone into his cell and attempted to wake Middlebrooks, there was no clear, definite, and certain policy which required them to do so. They were allowed to exercise their discretion and did so, electing not to awaken Middlebrooks who appeared to be in no distress and sleeping. Likewise, as the policy for regarding potentially suicidal inmates did not specify which items were to be taken out of a potentially suicidal inmate's cell and left such decisions to each deputy's discretion based on a common sense case-by-case basis based on the facts particular to each case, the deputies' decision to allow Middlebrooks, a recovering burn patient, to have sheets on his bed and crutches, which he needed to walk because of his broken leg, was a discretionary function.

Plaintiffs assert in their brief that pursuant to our holdings in *Clark v. Prison Health Svcs.*, supra, and *Washington v. Dept. of Human Resources*, 241 Ga. App. 319 (526 SE2d 354) (1999), all of the deputies' actions or failures to act must be classified as ministerial. We disagree. In *Clark*, the duties the employees of the sheriff's office failed to perform were specifically set out in the sheriff's office policy and were "so clear, definite and certain as merely to require the execution of a relatively simple, specific duty, leaving no room for examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." (Citation and punctuation omitted.) *Clark v. Prison Health Svcs.*, supra at 793 (4) (a). In *Washington v. Dept. of Human Resources*, supra, the plaintiff, a mentally retarded and mute adult, through her guardian, alleged she suffered second degree burns on her feet as a result of being placed in a bathtub filled with scalding water. Bathing someone requires merely the execution of a simple, specific duty and therefore is a ministerial act. The fact that the employees had to regulate the temperature of the water does not make it discretionary.

There having been no showing of any conduct by any of these defendants which would amount to wilfulness, malice, or corruption, they are entitled to official immunity as a matter of law. There was

no error in the trial court's grant of summary judgment to Deputies Morgan, Smith, Osgood, and Rachel.
*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MAY 22, 2003.

*Debra G. Gomez*, for appellants.
*Sell & Melton, Kevin T. Brown*, for appellees.