[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11323
_____

D.C. Docket No. 3:11-cv-00029-TCB

CHARLES GRAY,

Plaintiff-Appellant,

versus

MOSES ECTOR,
Chief of Police of Hogansville, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 18, 2013)

Before MARCUS, JORDAN, and KRAVITCH, Circuit Judges.

PER CURIAM:

Charles Gray, proceeding *pro se*, appeals the district court's grant of summary judgment in favor of all defendants on his civil rights claims relating to his arrest for burglary. After review, we affirm.

## I.

On the afternoon of February 18, 2010, Mr. Gray and Caleb Eudy observed a "For Sale" sign in the front yard of a vacant home in Hogansville, Georgia. Mr. Gray and Mr. Eudy were interested in potentially purchasing the property, so Mr. Eudy proceeded to call the property's realtor, Yvonne Bush, and left a message expressing his interest in the property. Then, Mr. Gray and Mr. Eudy walked on to the property, peered into the front windows of the home, and entered through the gate into the backyard. After reaching the backyard, Mr. Gray and Mr. Eudy entered the home through a backdoor.

Unbeknownst to Mr. Gray and Mr. Eudy, a neighbor, Caleb Douglas, observed all of this from his bedroom window across the street. Because Mr. Douglas thought that Mr. Gray and Mr. Eudy were about to burglarize the home, he called the Hogansville Police Department. Soon thereafter, Officers Jeffrey Shepherd, Raymond Gates, and Randy Mickle arrived at the home. Upon arrival, the officers noted that the back door of the home appeared to have been forced open. In addition, they noticed personal property placed in a pile, as well as two

2

functioning upright pianos inside the home. The officers confronted Mr. Gray and Mr. Eudy in the upstairs portion of the home.

When questioned by the officers, Mr. Gray and Mr. Eudy initially indicated that the realtor had given them permission to be in the home. But, after Mr. Eudy stated that he had only left an unreturned message for the realtor, both men admitted that they had entered the home without permission. According to Mr. Gray, the officers confiscated Mr. Eudy's cellphone during their initial discussion. The officers ultimately arrested Mr. Gray and Mr. Eudy for residential burglary. Mr. Gray was placed in a police cruiser and taken to the Troup County jail for booking. The case was eventually dismissed.

Following his release from jail, Mr. Gray wrote complaint letters to various Hogansville officials. After receiving Mr. Gray's allegations, Moses Ector, Hogansville Police Chief, asked the Georgia Bureau of Investigation to investigate Mr. Gray's claims. The GBI reported its findings to District Attorney Peter Skandalakis, who declined to pursue criminal prosecutions against any officers due to insufficient evidence.

Mr. Gray also contacted the local newspaper, alleging that the Hogansville police had tampered with evidence by deleting Mr. Eudy's cellphone call log.[1]

---

[1] Mr. Gray alleged that, while he was sitting in the police cruiser, he observed Officer Gates with Mr. Eudy's cellphone. He also alleged that this event was captured on the cruiser's camcorder. However, after the police department returned Mr. Eudy's phone, the phone's call

During an interview with the *Hogansville Home News*, a local newspaper, Officer Sheppard responded to Mr. Gray's allegations and recounted observing the condition of the property's backdoor and the pile of items inside the home.

Mr. Gray eventually filed suit against Officers Sheppard and Gates, Police Chief Ector, Assistant Police Chief John Pearson, Officer Kevin Taylor, City Mayor Jimmy Jackson, City Manager William Stankiewicz, various John and Jane Does, and the City of Hogansville.[2] His *pro se* thirteen-count complaint included: a false arrest claim against the individual defendants under 42 U.S.C. § 1983 (Count 1); a failure to train claim against the City of Hogansville under § 1983 (Count 2); a false arrest claim against all defendants under O.C.G.A. § 51-7-1 (Count 3); a false imprisonment claim against all defendants under O.C.G.A. § 51-7-20 (Count 4); various equal protection claims against all defendants for destruction of evidence, filing false statements, and witness intimidation (Counts 5-7 and 11); a conspiracy to slander claim under O.C.G.A. § 51-5-4 (Counts 8 and 10); a fraud claim against all defendants under O.C.G.A. § 23-2-53 (Count 9); a state civil RICO claim against all defendants (Count 12); and a conspiracy claim under 42 U.S.C. § 1985 (Count 13).

---

history documenting Mr. Eudy's call to the realtor had been deleted. When Mr. Gray later requested a copy of the video footage captured by the cruiser's camcorder, he was informed that the camcorder had not been recording at the time. Mr. Gray alleged that police deleted the footage in an effort to destroy evidence that Officer Gates tampered with Mr. Eudy's cellphone. The officers denied confiscating Mr. Eudy's cellphone.

[2] Mr. Gray voluntarily dismissed his claims against Officer Kevin Taylor.

At the close of discovery, all of the defendants filed a motion for summary judgment. In support of their motion, the defendants submitted a photograph of a corner inside the home, which contained trash bags, a lamp, and a box filled with assorted items. The photograph was labeled "Copper." On October 19, 2011, Mr. Gray filed a motion to compel the defendants to identify who took the "Copper" photograph as well as where and when it was taken. The district court granted that request and ordered the defendants to provide a response to those inquiries. While the summary judgment motion was pending, Mr. Gray filed a new motion to compel requesting that the defendants provide more responsive answers to the questions about the "Copper" photograph that were the subject of the prior motion to compel. The defendants filed a response, which stated that they had already provided Mr. Gray with responsive answers by e-mail and attached a copy of the correspondence as an exhibit.

The district court granted summary judgment in the defendants' favor. It found that there was probable cause to arrest Mr. Gray, which barred his false arrest, failure to train, and filing false statements claims (Counts 1-3 and 6).[3] It granted summary judgment on Mr. Gray's other equal protection claims (Counts 5, 7, and 11) because there was "no evidence in the record to support these claims."

---

[3] The basis for Mr. Gray's false statements claim (Count 6) is that Officer Sheppard committed fraud when he wrote on Mr. Gray's arrest warrant that sufficient facts existed to establish probable cause for his arrest.

*See* D.E. 73 at 16. [4] The district court also concluded that Mr. Gray's remaining state law claims were barred because the individual defendants were entitled to official immunity[5] and the City of Hogansville was entitled to sovereign immunity (Counts 4 and 8-12). In addition, the district court determined that Mr. Gray's 42 U.S.C. § 1985 conspiracy claim against all defendants failed because there was no underlying violation or, alternatively, because it was barred under the intracorporate conspiracy doctrine (Count 13). Finally, the district court dismissed Mr. Gray's claims against the various John and Jane Doe defendants for failure to identify them or provide a sufficient description of them.

In the same order, the district court denied Mr. Gray's motion to compel as moot. It noted that the defendants had indicated that they responded to Mr. Gray's discovery request, and Mr. Gray failed to object to the defendants' response. It also reasoned that, even if Gray found the responses to be deficient, they would not impact the outcome of the case.

## II.

---

[4] Mr. Gray's briefs do not contest this ruling and we, therefore, do not address it. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("[I]ssues not briefed on appeal by a *pro se* litigant are deemed abandoned.").

[5] Under Georgia law, "official immunity" and "qualified immunity" are used interchangeably. *See, e.g., Middlebrooks v. Bibb County*, 582 S.E. 2d 539, 543 (Ga. App. 2003) ("The doctrine of official immunity, also known as qualified immunity . . .") (citation omitted). The parties and the district court have also used both terms. In the interest of clarity, we use the phrase "official immunity" when discussing state law claims so as to distinguish it from the term "qualified immunity" that is used in the context of federal § 1983 claims.

We review the grant of summary judgment *de novo*, and the district court's factual findings for clear error. *See Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1271 (11th Cir. 2010). Mr. Gray raises four arguments on appeal. First, summary judgment should not have been granted because his motion to compel was still pending.  Second, the officers did not have probable cause for his arrest. Third, the individual defendants were not entitled to official immunity on his state law claims. Fourth, the city had waived its sovereign immunity. We address each issue below.

## A.

Generally, "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988). *See also* Fed. R. Civ. P. 56(f). But summary judgment can be appropriate if the additional discovery is already in the plaintiff's possession. *See Lehigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1219 (11th Cir. 2000) (holding that the court had an adequate record to grant the defendant's motion for summary judgment because the relevant evidence would have been in plaintiff's possession). We review the district court's decision to grant summary judgment while a motion to compel is pending for abuse of discretion. *See Dean v. Barber*, 951 F.2d 1210, 1213 (11th Cir. 1992).

7

In this case, the defendants provided unrebutted evidence that they had already given Mr. Gray the information concerning the "Copper" photograph that was requested in his pending motion to compel. *See* D.E. 71 at 8 ("The photo was taken at the scene by [Officer] Sheppard.").[6] Accordingly, the district court did not abuse its discretion in denying Mr. Gray's motion to compel as moot and granting summary judgment.

**B.**

A warrantless arrest made without probable cause violates the Fourth Amendment and is actionable under both federal and state law. *See Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (explaining that false arrest forms a basis for a § 1983 claim); O.C.G.A. § 51-7-1. Probable cause, however, serves as an absolute bar to a false arrest claim. *See, e.g., Ortega*, 85 F.3d at 1525; *Franklin v. Consolidated Government of Columbus, Ga.*, 512 S.E. 2d 352, 355-56 (Ga. App. 1999). And an officer has probable cause for an arrest when the arrest is "objectively reasonable based on the totality of the circumstances." *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003).

---

[6] Mr. Gray has never addressed or objected to this response in his filings in the district court and on appeal. Instead, he cites to an earlier response by the defendants where there was evident confusion as to whether "Copper" referenced the photograph itself or the items in the photograph. *See* Initial Br. at 16. Additionally, Mr. Gray included an unfiled reply in support of his motion to compel as part of the record excerpts. Although not part of the record on appeal, we note that Mr. Gray's unfiled reply also did not contest the validity of the defendants' response; it only asked that the response be given under oath.

Under Georgia law, a person commits first degree burglary "when, without authority and with the intent to commit a felony or theft therein, he or she enters or remains within an occupied, unoccupied, or vacant dwelling house of another . . . ." O.C.G.A. 16-7-1(b). In this case, the Hogansville Police Department received a call from an eyewitness who was observing two unknown men suspiciously inspecting a vacant home and then entering through the property's back gate. Officers Sheppard, Gates, and Mickle later arrived at the scene and saw that the back door to the kitchen appeared to have been damaged. The officers also observed piles of personal property and two pianos on the first floor of the home. And Mr. Gray and Mr. Eudy originally gave conflicting accounts on whether they had permission to enter the property before admitting that they did not. Under these circumstances, the district court correctly concluded that there was probable cause to arrest Mr. Gray for burglary, and the false arrest claims against Officers Sheppard and Gates are therefore barred.

Because probable cause existed, Mr. Gray's arrest also cannot serve as an underlying constitutional violation to establish supervisory liability for the other individual defendants or municipal liability for the City. *See Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) ("But a supervisor may not be held liable under section 1983 unless the supervised official committed an underlying violation of a constitutional right."); *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th

9

Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."). The district court, therefore, properly granted summary judgment on Counts 1, 3, and 6 against the individual defendants and Counts 2, 3, and 6 against the city.[7]

## C.

Under Georgia law, state employees performing their discretionary functions are officially immune from suit unless they "act with actual malice or with actual intent to cause injury in the performance of their official functions." *Jordan v. Mosley*, 487 F.3d 1350, 1357 (11th Cir. 2007) (citing Ga. Const. art. I, § II, ¶ IX(d). Actual malice requires that the employee act with "a deliberate intention to do wrong." *See Adams v. Hazelwood*, 520 S.E. 2d 896, 898 (Ga. 1999). It does not include implied malice, which is defined as "the reckless disregard for the rights and safety of others." *See Selvy v. Morrison*, 665 S.E. 2d 401, 405 (Ga. App. 2008).

Mr. Gray argues that actual malice has been shown because the defendants have purportedly lied about the facts needed to establish probable cause and then

---

[7] Mr. Gray also argues that the district court granted summary judgment on his § 1985 conspiracy claim (Count 13) based on its finding of probable cause. We do not find that to be a plausible reading of the district court's order. In actuality, the district court held that the § 1985 conspiracy claim was barred under the intracorporate conspiracy doctrine. Nevertheless, even if we were to liberally construe Mr. Gray's argument as a general contention that summary judgment on that claim was improper, it would still fail because we agree that the intracorporate conspiracy doctrine applied and barred Mr. Gray's claim. *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010).

intentionally fabricated an arrest warrant based on these facts. *See* Initial Br. at 20. This argument is without merit in light of our earlier conclusion that probable cause existed for Mr. Gray's arrest. We, therefore, hold that the district court correctly concluded that there was no evidence of actual malice and the individual defendants were entitled to official immunity on the state law claims for false imprisonment, slander, fraud, and civil RICO violations (Counts 4, 8-10, and 12).

### D.

Under Georgia law, the official immunity of a city employee does not implicitly protect the city from liability. *See Gilbert v. Richardson*, 452 S.E. 2d 476, 484 (Ga. 1994). The city "may be liable for a [city] employee's negligence in performing an official function to the extent that [it] has waived sovereign immunity." *Id*. A city can waive its sovereign immunity by purchasing liability insurance if the "policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy." O.C.G.A. § 36-33-1(a).

In this case, the district court held that the City of Hogansville was entitled to sovereign immunity on Mr. Gray's state law claims because there was no evidence in the record that the City had waived sovereign immunity. *See* D.E. at 23.  Mr. Gray, however, argues that he made a showing that the City had a liability insurance policy that covered this occurrence. In particular, he attached a claim

11

form that was filed by the City with One Beacon Insurance describing his allegations of false arrest for burglary. *See* D.E. 61-1 at 5. We believe this evidence creates a disputed issue of fact regarding the City's waiver of sovereign immunity and, therefore, the district court erred in granting summary judgment on this ground.

On appeal, the defendants have conceded that the district court erred on its sovereign immunity ruling. *See* Answer Br. at 17 n. 4 ("The District Court ruled that the [defendants] were entitled to sovereign immunity. . . . For all intents and purposes this limited ruling was in error . . . ."). Nevertheless, they argue that the claims potentially barred by sovereign immunity are alternatively barred by probable cause. *See id*.

We agree. First, Mr. Gray's slander and fraud claims (Counts 8-10) are premised upon allegations that the City knew that Officer Sheppard made an unlawful arrest and then acted in concert with him to cover it up. Second, Mr. Gray's false imprisonment claim (Count 4) against the City also relies on an allegation that he was unlawfully detained "based on a complete lack of probable cause . . ." *See* D.E. 1 at ¶ 59. Third, the alleged racketeering activity in Mr. Gray's civil RICO claim (Count 12) was that the City was "trumping up phony charges and then reducing such charges in order to plunder the citizens." *Id*. at ¶ 125. Simply put, the underlying premise for each of these claims cannot hold based

12

upon our prior ruling that there was probable cause.[8] We, therefore, hold that summary judgment in the City's favor was still proper on Mr. Gray's state law false imprisonment, slander, fraud, and civil RICO claims (Counts 4, 8-10, and 12) due to probable cause. *See Kernal Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012) ("[We] may affirm the judgment of the district court on any ground supported by the record, regardless of whether that ground was relied upon or considered by the district court.").

## III.

For the foregoing reasons, we affirm the district court's grant of the defendants' motion for summary judgment and its denial of Mr. Gray's motion to compel discovery.

**AFFIRMED**.

---

[8] Under Georgia law, probable cause is not a complete defense to a false imprisonment claim unless the arrest was made pursuant to the exigent circumstances enumerated in O.C.G.A. § 17-4-20(a). *See Arbee v. Collins*, 463 S.E. 2d 922, 926 (Ga. App. 1995). In this case, the record supports a finding that Mr. Gray's arrest falls under one of those exigent circumstances. *See* O.C.G.A. § 17-4-20(a)(2)(B) ("The offense is committed in such officer's presence or within such officer's immediate knowledge."). Probable cause, therefore, bars Mr. Gray's false imprisonment claim based upon the facts of this case.