A07A0669. GOLDEN et al. v. VICKERY.
(645 SE2d 695)

PHIPPS, Judge.

Charles Golden was employed by Southern Heritage Construction installing siding onto the roof of a building, when the metal bucket attached to a lift he was operating came in contact with a high-voltage electric line owned and maintained by the City of Calhoun. Golden and his wife brought this suit against Larry Vickery and other unnamed employees of the City of Calhoun Electric Department to recover for personal injuries and loss of consortium resulting from the severe electric burns Golden received. The Goldens appeal the trial court's award of summary judgment to Vickery on the ground of qualified immunity. We find no error and affirm.

To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the non-movant's favor, warrant judgment as a matter of law. A defendant who will not bear the burden of proof at trial need only show an absence of evidence to support an essential element of the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on

---

its pleadings, but rather must point to specific evidence giving rise to a triable issue.[1]

Here, it is undisputed that several days before the work on the building was to be performed, Southern Heritage notified the city electric department that it would be working near the city's high-voltage lines and asked that the lines be de-energized. Vickery, superintendent of the city's electric department, testified that a decision was made by someone in the electric department, in all likelihood himself, to install protective covering on the lines rather than to de-energize them, because they were integral lines carrying power to numerous electricity users. The lift Golden was operating came in contact with one of the electric lines after the protective covering failed. The Goldens presented evidence that, after that incident, the lines were relocated in less than one hour. In moving for summary judgment, Vickery argued, among other things, that his decision as to how to guard against danger from accidental contact with the lines was a discretionary one entitling him to immunity from liability. Agreeing with this argument, the trial court granted Vickery's motion for summary judgment.

## The qualified immunity doctrine

The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity. Qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure.[2]

## The ministerial/discretionary act distinction

A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a

---

[1] *Latson v. Boaz*, 278 Ga. 113, 113-114 (598 SE2d 485) (2004) (citations and punctuation omitted).

[2] *Middlebrooks v. Bibb County*, 261 Ga. App. 382, 385 (2) (582 SE2d 539) (2003) (citation omitted).

specific duty. A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty.[3]

Under this standard it makes no difference that the official is required to perform discretionary acts if the complained-of act is more properly characterized as ministerial. The single overriding factor is whether the specific act from which liability allegedly arises is discretionary or ministerial.[4]

Determination of whether the act is ministerial or discretionary thus turns upon the facts of each case.[5]

### *Cases finding breach of ministerial duty in failure to execute a specific task*

A line of cases represented by *Lincoln County v. Edmond*[6] and *Miree v. United States*[7] has recognized that " '[t]he execution of a specific task is characterized as ministerial even though the manner in which it is accomplished is left to the employee's discretion.' "[8]

In *Miree*, the manager of a county airport received orders from the Federal Aviation Administration to remedy or provide warnings of the hazard created by flocks of birds congregating near a runway. The federal district court concluded that the manager had a ministerial duty to do one or the other and that, even though he had freedom to choose the appropriate method to complete the alternative tasks he had been assigned, his qualified immunity was breached by his failure to do either.

Similarly, in *Lincoln County*, a county road superintendent was charged with a duty to remove trees obstructing county roads or to provide warnings of the danger. There was evidence that after being notified that a tree had fallen across a county road in a heavy rainstorm, the road superintendent failed to go to the site and provide

---

[3] Id. at 385-386 (citation omitted).

[4] *Joyce v. Van Arsdale*, 196 Ga. App. 95, 96 (395 SE2d 275) (1990) (citation and punctuation omitted).

[5] *Wanless v. Tatum*, 244 Ga. App. 882 (536 SE2d 308) (2000).

[6] 231 Ga. App. 871 (501 SE2d 38) (1998).

[7] 490 FSupp. 768 (N.D. Ga. 1980).

[8] *Lincoln County*, supra at 874 (2), citing *Joyce*, supra at 97 and *Miree*, supra at 773-774.

warnings and, for approximately two hours after being informed of the hazardous condition, he failed to take action to remove the tree. We found that he could be held liable for breach of a ministerial duty.

### Cases finding breach of ministerial duty in negligent performance or supervision of physical work

*Nelson v. Spalding County*[9] recognized that although the warden of a county correctional institute had a ministerial duty to replace missing stop signs or warn travelers of the danger, he could not be held vicariously liable for the negligence of subordinate county employees in executing the work even though he could be held liable for negligently supervising them.

In *Joyce v. Van Arsdale*,[10] we dealt with the principle that

[s]hould the (county) decide when a street should be opened, closed, or repaired, or when a sewer should be built, it is clearly exercising legislative or judicial functions, but when it engages in the work of opening, closing, or repairing a street, or building a sewer, and is thus engaged in the physical execution of the work, it is evidently in the discharge of duties purely of a ministerial nature.[11]

We thus held that county road officials who had been directed to close certain bridges and place appropriate signs and barricades could be held liable for negligent performance or supervision of the physical work of erecting the barricades.[12]

### Cases finding breach of ministerial duty in failure to follow established policy or procedure

In *Wanless v. Tatum*,[13] engineers in the county's road department were charged with breach of ministerial functions in responding to public complaints about a county road. The record in that case demonstrated that the department had an established policy requiring a county employee who received a citizen complaint to write it down and forward it to the appropriate section for investigation. We

---

[9] 249 Ga. 334, 336-337 (2) (a) (290 SE2d 915) (1982).

[10] Supra at n. 4.

[11] 196 Ga. App. at 97 (citations and punctuation omitted).

[12] Compare *Coffey v. Brooks County*, 231 Ga. App. 886, 889 (2) (b) (500 SE2d 341) (1998) (where inspecting roads and making decisions regarding necessary repairs involved discretionary acts, county road superintendents supervising employees in so doing were discharging discretionary duty).

[13] Supra at n. 5.

220

found that "this policy established a ministerial duty on the department's employees to record and investigate complaints" and that " '[w]hile the act of establishing a policy in the first place is discretionary, the acts of following established policies . . . are ministerial.' "[14]

*Cases finding discretion to act in absence of established guidelines*

In *Stone v. Taylor*,[15] however, the chairman of the county commission was charged with negligence in failing after inspection to have the county level the shoulder of a resurfaced road. Because the county had no policy or procedures dealing with the leveling or other treatment of road shoulders, and because the decision concerning leveling of the road involved deliberations based on the official's observations of the road surface and other conditions, we held that the act was discretionary.[16] Likewise, in *Vertner v. Gerber*,[17] a prison official's decision to assign an inmate to a work detail was found to be discretionary where, rather than following any established guidelines, he evaluated and weighed information and made decisions based on his judgment and experience. In *Hemak v. Houston County School Dist.*,[18] we recognized that school administrators or teachers having responsibility for inspecting school property for hazards, deciding what constitutes a hazard, selecting appropriate methods for correction of hazards, and creating priorities and a schedule for corrections are involved in the exercise of discretionary functions. Likewise, *Cameron v. Lang*[19] concluded that the law enforcement officers there were exercising their discretion when they decided to engage in a high speed pursuit against persons suspected of stealing a car.

The Goldens seek to hold Vickery liable for negligence in deciding to install protective covering on the high-voltage electric lines rather than to de-energize or relocate them. The High-Voltage Safety Act (HVSA), in OCGA § 46-3-33, provides that no person, firm, or corporation shall commence any work within ten feet of any high-voltage line unless and until:

---

[14] *Wanless*, supra at 884, citing *Phillips v. Walls*, 242 Ga. App. 309, 311 (1) (529 SE2d 626) (2000).
[15] 233 Ga. App. 886 (506 SE2d 161) (1998).
[16] Id. at 888-889 (2).
[17] 198 Ga. App. 645 (402 SE2d 315) (1991).
[18] 220 Ga. App. 110 (469 SE2d 679) (1996).
[19] 274 Ga. 122, 124-125 (2) (549 SE2d 341) (2001).

(1) The person responsible for the work has given the notice required by Code Section 46-3-34; and (2) The owner or operator of such high-voltage line has effectively guarded against danger from accidental contact by either deenergizing and grounding the line, relocating it, or installing protective covering or mechanical barriers, *whichever safeguard is deemed by the owner or operator to be feasible under the circumstances.*[20]

Therefore, OCGA § 46-3-33 (2) clearly gives the owner or operator of high-voltage electric lines discretion in deciding what protective measures to take. Moreover, as found by the trial court, there is no evidence that the City of Calhoun Electric Department has any policy, procedure, or guideline for its employees to follow in making that decision. Therefore, Vickery was undisputably exercising a discretionary function in deciding to insulate the lines rather than to de-energize or relocate them. And because there is no evidence that he had any involvement in the incident other than making the decision as to what safety precaution to take, the Goldens' claim against him for negligent work supervision fails.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MAY 2, 2007 — ■

*Akin & Tate, William M. Akin, S. Lester Tate III*, for appellants.
*Freeman, Mathis & Gary, Theodore Freeman, Donald J. Grate*, for appellee.

---

[20] (Emphasis supplied.) Vickery also argued that he was entitled to summary judgment because Southern Heritage provided notice of the work to be performed in the vicinity of the high-voltage electric lines directly to the City of Calhoun, rather than first providing the utilities protection center with the detailed notice required by OCGA §§ 46-3-33 (1) and 46-3-34. See *Jackson Elec. Membership Corp. v. Smith*, 276 Ga. 208 (576 SE2d 878) (2003). The trial court did not, however, rule on this issue. We do not find it necessary to do so either, even though the issue might be dispositive.