**March 30, 2015**

# In the Court of Appeals of Georgia

A14A1580. COOLEY v. BRYANT.

RAY, Judge.

Jonathan Bryant, an inmate at the Muscogee County Prison, was actively participating on a work crew assigned to the Columbus Parks and Recreation Department when he was injured by a lawn mower. Bryant filed suit against Michael Cooley, the correctional officer supervising the crew, in his individual and official capacities, for the injuries Bryant sustained. Cooley filed a motion for summary judgment, arguing that Bryant's claims against him were barred by the doctrines of sovereign immunity and official immunity. Finding that Bryant's claims against Cooley in his official capacity were barred by the doctrine of sovereign immunity, the trial court granted his summary judgment in part. However, the trial court denied Cooley's summary judgment motion as to Bryant's claims against him personally.

The trial court found that Cooley's acts of maintaining and inspecting the lawnmower were ministerial, not discretionary, and that Bryant's claims against him were not barred by the doctrine of official immunity. The trial court certified its order for immediate review, and this Court granted Cooley's petition for interlocutory review. We affirm the trial court's denial of Cooley's summary judgment motion, but remand the case to the trial court for a jury to determine whether, under the facts of this case, Cooley knew that the lawnmower was defective and presented a dangerous condition, such that his ministerial duty to have the mower repaired would trigger, and if so, all issues related to liability and damages.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. On appeal from the denial or grant of summary judgment, the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Punctuation and footnotes omitted.) *Taylor v. Campbell*, 320 Ga. App. 362, 362 (739 SE2d 801) (2013).

The record shows that on May 3, 2006, Bryant, an inmate at the Muscogee County Prison, was assigned to an inmate work detail where he was directed to cut

grass at Dinglewood Park in Columbus, Georgia. The detail supervisor was Correctional Officer Cooley. Cooley was responsible for supervising the inmates during the work detail and for ensuring that the equipment they were using was operational. Cooley deposed that he inspected the lawnmowers to ensure that they had oil and gas and that the blades were sharp. If anything needed repair, he would deliver it to the maintenance shop. Cooley would again inspect the equipment in the evening after it had been used to make sure that it was "clean, serviceable, [and] ready for the next day's work." There was no written policy or procedure governing Cooley's inspections or requiring him to inspect the equipment for safety.

On the day of his injury, Bryant was assigned to the task of mowing with a three-wheel push mower. To start the mower, Bryant had to connect the spark plug and pull the crank. The mower's safety lever had been disconnected at the time he began work that morning. This lever would normally have to be held to start and keep the mower running. Bryant stated that Cooley instructed him to make sure that the spark plug was plugged in when he turned the mower on and that he should hold a zip tie attached to the spark plug to pull the spark plug out if he wanted to turn the mower off. Further, the safety flap on the side of the mower where the grass shoots out was

3

missing. Bryant also explained that he informed Cooley that the mower assigned to him was meant for flat surfaces, but that Cooley instructed him to mow a hilly area.

Cooley deposed that he had not experienced any previous maintenance issues with that mower, and that he had inspected the mower on the day of Bryant's injury and confirmed that it had not been altered or changed in any way. However, it was common for inmates hoping to avoid working to "mess" with the equipment. Bryant deposed that it was "common knowledge" that the equipment given to the inmates to perform their work duties was "half crap" and that guards did not seriously consider complaints from other inmates regarding equipment safety.

On the date at issue, the inmate crew was finishing up their work at the park when Bryant's accident occurred. Bryant pushed the mower down a hill to cut grass as close to the adjacent ditch as possible when his mower gained so much momentum that he was almost running to stop the mower from escaping his grasp. The three-wheeled mower hit a hole, dug into the ground, and flipped up sideways. Bryant pushed the mower off to the side and tried to jump clear, but his leg hit the portion of the mower where the grass shoots out and was seriously injured. The mower continued to operate during the event because the mower's safety lever, which would

4

normally automatically shut off the mower in such a situation, was inoperable at the time. Another inmate ran up and pulled the spark plug out to stop the mower.

Bryant filed suit against Cooley individually and in his official capacity for negligent inspection and negligent maintenance of the lawn mower. Cooley filed a motion for summary judgment, arguing, inter alia, that the claims against him in his individual capacity were barred by the doctrine of official immunity. The trial court denied Cooley's summary judgment motion as to the claims against him personally, finding that Cooley's inspection and maintenance of the lawnmowers was ministerial and that Bryant's claims against Cooley were not barred under the theory of official immunity. The trial court issued a certificate of immediate review, and this Court granted Cooley's application for interlocutory review after finding that it fell under the collateral order doctrine.[1]

---

[1] Official immunity, like sovereign immunity, "is an entitlement not to stand trial rather than a mere defense to liability." (Citation and punctuation omitted.) *Taylor*, supra at 363, n. 3. The Court of Appeals

has held that an order denying such an immunity claim is appealable under the collateral order doctrine order because the order conclusively determines the disputed question, resolves an important issue completely separate from the merits of the action, and is effectively unreviewable on appeal from a final judgment.

1. Cooley contends that the trial court erred in denying his motion for summary judgment as to the issue of official immunity based upon a finding that his inspection and maintenance of the lawn mowing equipment was ministerial, and not discretionary.

> The doctrine of official immunity, also known as qualified immunity, offers public officers and employers limited protection from suit in their personal capacity. Qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.

(Citations omitted.) *Williams v. Pauley*, __ Ga. App. __ *1 (Case No. A14A2033, decided February 18, 2015). Official immunity is an "'entitlement not to stand trial' rather than a 'mere defense to liability.'" (Footnote omitted.) *Cameron v. Lang*, 274 Ga. 122, 124 (549 SE2d 341) (2001). Accordingly, as a correctional officer in the Parks and Recreation Division of the Columbus Consolidated Government, Cooley

---

(Citation and punctuation omitted.) Id.

6

is "entitled to official immunity for the negligent performance of *discretionary* acts within the scope of his authority as an officer; he may be personally liable if he negligently performed a *ministerial* act or acted with actual malice or an intent to injure when performing a discretionary act." (Citations omitted; emphasis supplied.) *Williams*, supra. Because Bryant does not claim that Cooley acted with actual malice or an intent to injure, the issue is whether the alleged negligence involved discretionary or ministerial action.

> The difference between ministerial and discretionary acts has been explained as follows: A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty.

(Footnote omitted.) *Taylor*, supra at 363-364. "Whether the acts upon which liability is predicated are ministerial or discretionary is determined by the facts of the particular case." (Citation and punctuation omitted.) *Parrish v. Akins*, 233 Ga. App. 442, 443 (1) (504 SE2d 276) (1998).

7

Cooley deposed that it was his responsibility to make sure the equipment was "operational; make sure there's oil, gas in it; blades are sharp." He deposed that he inspected the equipment twice daily to make sure that "it's clean, serviceable, ready for the next day's work." If he did discover a piece of equipment that needed repair, he would take it to the City's maintenance shop. However, Cooley's affidavit testimony stated that "[t]here is no written policy or procedure governing the manner in which the mower was to be inspected[.]" Bryant has pointed to no evidence of a policy, written or unwritten, requiring Cooley to conduct safety inspections in a certain manner. However, both Cooley and Tony Adams, the director of the Columbus Parks and Recreations Department , agreed that there was an unwritten policy in the Department that a correctional officer has a duty to take defective equipment to the maintenance shop when it required maintenance.

The evidence shows that a cursory examination of the lawn mower would have revealed that the lawnmower at issue was in need of repair: the flap covering the grass shootout was missing, the sparkplug had to be connected to start the mower, the safety lever meant to shut off the mower was not operational, and in order to shut the mower off and disengage the blade, the sparkplug had to be removed by means of a zip tie. The record also contains a question of fact as to whether Cooley was aware

8

of these issues: Bryant deposed that Cooley instructed him to turn the lawn mower off using the zip tie attached to the spark plug, and Cooley deposed that the mower did have a kill switch.

Cooley argues that his inspection of the lawn mower was discretionary because there is no policy or procedure governing how he conducted such inspections. Even in the absence of such a policy, however, there is evidence in the record that Cooley was aware that the lawnmower had several defects in its safety features, and once he became aware of such safety issues, there is evidence of an unwritten policy requiring him to take the faulty lawn mower to the maintenance shop for repairs. The duty to take defective machinery to the maintenance shop for repairs clearly constitutes a ministerial act. Cooley's duty under the Department's policy was simple: to deliver defective equipment to the maintenance shop.

Where the relevant facts pertaining to official immunity are in dispute, resolution of the factual issues is for the jury. *Eshleman v. Key*, 326 Ga. App. 883, 888 (755 SE2d 926) (2014) (cert. granted on September 8, 2014 to decide the issue of whether OCGA § 51-2-7 created a ministerial duty). In *Eshleman*, an off-duty police canine handler failed to properly secure a department-owned canine in the back of a pickup truck and the canine got loose and bit a child playing nearby. This Court

9

held that there was evidence sufficient to create a question of fact as to whether the officer knew the dog to be dangerous or vicious. If the officer had such knowledge, then she was bound by a ministerial duty imposed by a statute governing "vicious or dangerous animals" to keep the dog properly restrained. Similarly, here, there is evidence that Cooley was bound by a ministerial duty to take the lawnmower to the maintenance shop once he realized that it needed repair. A question of fact to be decided by the jury then is this: whether Cooley did, in fact, have knowledge that the lawnmower was defective and needed repair, such that the ministerial duty to take it for repair kicked in.

This Court's opinion in *Glass v. Gates*, 311 Ga. App. 563, 564-566, 574-577 (2) (716 SE2d 611) (2011), supports our holding. In *Glass*, an inmate was killed during a prison work detail supervised by a correctional officer. Plaintiff presented evidence of unwritten departmental policies requiring a detail supervisor to contact the work camp and request a service truck for assistance in the event a tractor got stuck in a ditch, and requiring a laborer to be at least 50 feet behind an operating tractor at all times. The evidence showed that the defendant detail supervisor violated these unofficial policies when instructing the inmate to attempt to remove a tractor stuck in a ditch, and the inmate subsequently died of injuries sustained during that attempt. This Court held that a grant of summary judgment was in error because, in

10

light of the plaintiff's evidence regarding the unwritten departmental policies, there was a question of fact as to whether there was actually an established policy and, thus, whether the correctional officer's act was discretionary or ministerial. Similarly, here, there is a fact question as to whether Cooley was aware that the lawn mower was in need of repair, and if so, then he is bound to comply with the unwritten Department policy requiring him to complete the ministerial act of delivering the lawn mower to the maintenance shop for repair.

The dissent contends that even if Cooley knew that the kill switch was disabled, that he nonetheless engaged in a discretionary act in failing to take it to the maintenance shop for repair. We disagree. Both Cooley and Adams, the Director of the Parks and Recreation Department, agreed that once a lawnmower's safety or kill switch is disconnected or rendered inoperable, that it becomes a dangerous piece of machinery. Thus, if the jury concludes that Cooley was aware of this defect, then the unwritten department policy merely dictated that he complete a simple task: that is, to take the lawnmower to the maintenance shop for repair.

2. Cooley's remaining enumeration is without merit.

*Judgment affirmed in part, and case remanded. Barnes, P. J., and Branch J., concur. McFadden, J., concurs specially. Doyle, P. J., concurs in judgment only. Andrews, P. J., and Boggs, J., dissent.*

A14A1580. COOLEY v. BRYANT.

MCFADDEN, Judge, concurring fully and specially.

I concur fully in the majority opinion. I write separately to explain that this case properly falls into the line of cases that have "recognized that the execution of a specific task is characterized as ministerial even though the manner in which it is accomplished is left to the employee's discretion." *Golden v. Vickery*, 285 Ga. App. 216, 218 (645 SE2d 695) (2007) (citations and punctuation omitted). A jury would be authorized to conclude that the unwritten policy at issue required Cooley to inspect the equipment not only to confirm that it was operational but also for safety and that Cooley's admitted failure to inspect for safety was a failure to execute that ministerial duty.

A14A1580.  COOLEY v. BRYANT.

ANDREWS, Presiding Judge, dissenting.

Because there is no factual question requiring that this case be remanded on the official immunity issue, and the record shows that Officer Cooley was entitled, as a matter of law, to official immunity, I respectfully dissent.

Jonathan Bryant, a prison inmate at the Muscogee County Prison, was injured while voluntarily working as part of a crew of inmates cutting grass with a power lawn mower under the supervision of Michael Cooley, a correctional officer employed by the Columbus Consolidated Government (CCG).  Mr. Bryant sued Officer Cooley to recover damages for his injury, naming Cooley as a defendant in his individual capacity, thus seeking to impose personal liability on Cooley for the injury. Mr. Bryant alleged in his amended complaint that his injury was caused by a defective and dangerous lawn mower that he used under Officer Cooley's supervision, and that Cooley negligently caused the injury by failing to properly

inspect the lawn mower, discover the defects, and have the mower repaired to make it safe before it was used. Asserting "official immunity" from this claim, Officer Cooley moved for summary judgment, the trial court ruled that he was not immune and denied the motion, and Cooley appealed pursuant to this Court's grant of his petition for interlocutory review.

> The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity. Qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.

*Cameron v. Lang*, 274 Ga. 122, 123 (549 SE2d 341) (2001) (citations and punctuation omitted); *Gilbert v. Richardson*, 264 Ga. 744, 750–753 (452 SE2d 476) (1994). As a correctional officer employed by the CCG, Officer Cooley was protected by the doctrine of official immunity, and may be held personally liable on Bryant's claim only if: (a) he negligently performed a ministerial act, or (b) he acted with actual malice or an intent to injure. *Cameron*, 274 Ga. at 125-126; *Phillips v. Hanse*, 281 Ga. 133, 133 (637 SE2d 11) (2006). Mr. Bryant claims that Officer

2

Cooley acted negligently – he does not claim that Cooley acted with actual malice or an intent to injure.  Accordingly, Officer Cooley was entitled to official immunity from the asserted claim if he was negligent while performing a discretionary act, even if that negligence amounted to a reckless disregard for Bryant's safety. *Cameron*, 274 Ga. at 125-126; *Murphy v. Bajjani*, 282 Ga. 197, 203-204 (647 SE2d 54) (2007); *Williams v. Solomon*, 242 Ga. App. 807, 809 (531 SE2d 734) (2000).  It follows that the issue presented in Officer Cooley's motion for summary judgment is whether the negligence alleged involved discretionary or ministerial action.

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty.  A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.  Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty.

*Banks v. Happoldt*, 271 Ga. App. 146, 149 (608 SE2d 741) (2004) (citations and punctuation omitted).  Under this definition, the record shows, as a matter of law, that the alleged negligence involved discretionary action by Officer Cooley.

Officer Cooley was assigned to the CCG's Parks and Recreation Department, where he supervised a crew of prison inmates (generally four to eight inmates) while

3

they performed yard work on parks and recreation areas. Each morning, Officer Cooley would go to the Muscogee County Prison to pick up inmates who volunteered to serve on his work crew that day. Under Officer Cooley's supervision, the inmates cut grass and did other yard work using a variety of equipment, which included power lawn mowers, weed eaters, chainsaws, and edgers.

On the day of the injury, Mr. Bryant was part of Officer Cooley's inmate crew and was cutting grass using a three-wheeled power lawn mower. Mr. Bryant testified that one of the wheels ran into a depression in the ground, and the mower flipped over on its side with the engine still running and the blades spinning. With his momentum carrying him forward toward the mower, Bryant tried to jump over the mower to clear the blades, but in doing so his leg was cut by the spinning blades. Mr. Bryant alleged that the mower had two defective conditions that rendered it dangerous to use and contributed to his injury. First, he claimed that, when he lost control of the mower and it flipped over, the safety or kill switch, which was designed to shut down the engine under those circumstances, was not operational, and the engine continued to run and spin the blades. Second, he claimed that a rubber flap or guard on the side of the mower's deck, where cut grass was dispelled, was missing. According to Mr. Bryant, when he attempted to jump over the mower, his leg was cut by the spinning

4

blades where the rubber flap should have been located. Mr. Bryant also gave testimony indicating that Officer Cooley knew the safety or kill switch was not operational, because Cooley told him that, to shut down the engine on the mower, he would need to manually pull the cap off the spark plug.

Officer Cooley testified to the contrary that he had experienced no maintenance problems with the mower at issue; that he inspected the mower the morning before Bryant used it; that the mower had not been altered since it had been in use for about a year prior to the injury; that the mower had a kill switch designed to be released by the operator to shut down the engine; that it was not necessary to disengage the spark plug to shut down the engine; and that the rubber flap on the side of the mower's deck had not been removed. In addition to supervising the inmates on the crew, Officer Cooley testified about his responsibility for maintenance of the equipment.

Q: Do you have any responsibility regarding maintenance of the equipment?

A: Yes.

Q: What would that be?

A: Well, make sure it's all operational.

Q: When you say you make sure it's all operational, do you actually do an inspection?

5

A: Yes, sir.

Q: As far as the specific lawn mowers, would you do an inspection or what would you do as far as the inspection and maintenance?

A: Inspection. Make sure it's all operational; make sure there's oil, gas in it; blades are sharp.

Q: If anything needed to be worked on or repaired on the mower, would you do it?

A: No, sir.

Q: How would you handle the repair?

A: I would take it down to our maintenance shop.

According to Officer Cooley, he inspected the equipment twice daily (before and after work) to "make sure it's clean, serviceable, [and] ready for the next day's work." Additionally, Officer Cooley gave a sworn statement that "[t]here is no written policy or procedure governing the manner in which the mower was to be inspected. . . ." The director of the Parks and Recreation Department testified regarding a question about unwritten repair policy as follows:

Q: Is there a policy if there's a piece of equipment that needs to be repaired? Is there a policy about how that process is supposed to be carried out to get the repair completed?

A: Normally if it's a vehicle or equipment, policy is you notify your supervisor that you got a piece of equipment that's down, you getting

6

ready to take it to Fleet Maintenance or small engines or large engines or whatever the case may be. And you take that piece of equipment down.

Officer Cooley's counsel conceded at the hearing on the motion for summary judgment that there was evidence in the record that Cooley knew the kill switch on the mower had been disabled. Based on evidence that Officer Cooley knew the kill switch was disabled when he provided the mower for Mr. Bryant's use, Bryant narrowed his opposition to summary judgment, and argued at the hearing that Cooley negligently failed to perform a ministerial duty – to take the mower out of service and have it repaired before giving it to him to cut grass. The trial court agreed, found evidence that Officer Cooley knew the kill switch was disabled, and denied Cooley's motion for summary judgment on the basis that this alleged negligence was ministerial in nature.

"The determination of whether an action is discretionary or ministerial depends on the character of the specific actions complained of, not the general nature of the job, and is to be made on a case-by-case basis." *Davis v. Effingham County Bd. of Commrs.*, 328 Ga. App. 579, 584-585 (760 SE2d 9) (2014) (citation and punctuation omitted). The mere fact that taking equipment out of service to have it repaired is a simple and definite act does not make it a ministerial act; to be ministerial, the act

7

"must be done in 'the execution of a specific duty.' *McDowell v. Smith*, 285 Ga. 592, 593 (678 SE2d 922) (2009)." *Roper v. Greenway*, 294 Ga. 112, 114 (751 SE2d 351) (2013). Accordingly, "[a] ministerial duty may be established by evidence such as a written policy, an unwritten policy, [or] a supervisor's specific directive. . . ." Id. at 114-115 (citations omitted). But "[p]rocedures or instructions [in a policy or directive] adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty." Id. at 115 (punctuation and citation omitted). As to Officer Cooley's duty to have equipment repaired, there was no written policy, and no evidence of an unwritten policy or directive which established a ministerial duty by requiring Cooley "to take specified action in a specified situation." *Roper*, 294 Ga. at 115, n. 2 (punctuation and citation omitted). Rather, the only evidence is the existence of a general policy to get equipment repaired "when you got a piece of equipment that's down," or when repairs are needed to make the equipment "operational" or "serviceable and ready." This evidence established a discretionary repair duty which required Officer Cooley to exercise personal deliberation and judgment to reach reasoned conclusions about when a piece of equipment, which was still capable of being operated to get yard work done, should nevertheless be taken out of service to

8

have a particular mechanical or safety component repaired. Id. at 116. Cooley's exercise of judgment is inherent in assigning priorities between the duty to get the assigned yard work done with the equipment provided, and the need to maintain the equipment in a reasonably safe working condition. *Parrish v. State*, 270 Ga. 878, 879 (514 SE2d 834) (1999) (correctional officer's actions in supervision of prisoner work detail were discretionary because the officer was "required to exercise judgment in choosing the priority to be assigned to . . . diverse responsibilities."). There was no policy, written or unwritten, which directed Cooley to take specified action in a specified situation to handle these responsibilities.

There is no need to remand this case for the jury to resolve whether or not Officer Cooley was aware (or should have been aware) that the mower's kill switch was disabled, or that the rubber flap on the deck was missing. Even assuming (as the parties and the trial court did) that evidence showed Cooley had this knowledge, the record shows that there was no policy or directive which established that Cooley had a ministerial duty to take the mower out of service and have it repaired. On this record, the issue of whether Officer Cooley was entitled to official immunity was one of law for the trial court. *Cameron*, 274 Ga. at 124. Although there is evidence to support the conclusion that Officer Cooley's failure to have safety features on the

9

mower repaired before it was used was negligent, and may have amounted to reckless disregard for Mr. Bryant's safety, there was no basis to find that Cooley's actions were ministerial and that he forfeited the protection of official immunity. Because, construing the record in Mr. Bryant's favor, there is no issue of material fact, and Officer Cooley was entitled, as a matter of law, to official immunity, the trial court erred by denying Cooley's motion for summary judgment. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

I am authorized to state that Judge Boggs joins in this dissent.