In the Supreme Court of Georgia

Decided: June 20, 2016

S15G1310.  PEARCE et al. v. TUCKER.

HUNSTEIN, Justice.

This matter arises out of a wrongful death suit filed by Tammy Pearce ("Appellant"), individually and as administrator of the estate of her husband, Christopher Pearce ("Pearce"), against Glynn County Police Officer Henry Tucker after Pearce committed suicide while in custody. The trial court denied Officer Tucker's motion for summary judgment; the Court of Appeals reversed the judgment of the trial court, concluding that there was insufficient evidence that any negligent act by Officer Tucker proximately caused Pearce's death, and this Court subsequently granted certiorari to review that decision.  We now hold as a threshold matter that Officer Tucker is entitled to qualified immunity, and we therefore need not address the merits of Appellant's negligence claim. Accordingly, we affirm the judgment of the Court of Appeals under our right-for-any-reason rule.

On the day of his suicide, Pearce – who suffered from major depressive

disorder – arrived unexpectedly at his pastor's house carrying a pistol in his hand; the pastor and his wife summoned help while Pearce remained outside. Officers Henry Tucker and William Tomlinson, Jr., arrived at the residence and observed Pearce with a gun tucked in his waistband. Pearce, a convicted felon, was subsequently handcuffed, relieved of the firearm, and placed in a patrol car. Officer Tucker transported Pearce to the Glynn County Police Department headquarters. Once at the headquarters, Pearce was placed in a holding cell with a monitored video feed. Pursuant to police department policy, Officer Tucker had Pearce remove his shoes, belt, tie, and the contents of his pockets. Approximately 15-20 minutes after being placed in the holding cell, Pearce ended his life by hanging himself with his socks.

It is undisputed that Officer Tucker failed to comply with Glynn County Police Department Policy 22.16.3 (E) before placing Pearce in the holding cell.[1] That policy states as follows:

> Officers detaining a person must complete a screening form on the person before they are placed in the temporary holding cell and before they are transferred to another agency. The purpose of the

---

[1] Officer Tucker was ultimately disciplined for his failure to comply with the policy.

2

screening is to determine whether medical attention is required of the person to be detained. The officer must fill out the screening form, noting and inquiring as to:

> 1. The current health of the detainee
> 2. Medications taken by detainee
> 3. Behavior, including state of consciousness and mental status, and
> 4. Body deformities, trauma markings, bruises, lesions, ease of movement, etc.

> Blank forms will be kept in the fingerprinting room. Completed forms will be submitted to the on-duty supervisor who will review and then forward them to the Patrol Division Commander who will review and file the forms in the Records Section to be kept for a period of two years.

The "screening form" referenced in the department policy is styled "Holding Cell Medical Information," and, pursuant to the policy, it provides spaces for an officer to record details regarding a detainee's "health condition," medications, behavior, and "body (cuts, bruises, etc.)."

In her complaint, Appellant alleged, inter alia, that Officer Tucker negligently failed to have Pearce remove his socks before placing him in the holding cell.[2] Officer Tucker subsequently moved for summary judgment,

---

[2] Appellant also named both Glynn County and Officer Tomlinson as defendants. Glynn County moved for summary judgment on the basis that it was entitled to sovereign immunity, and Officer Tomlinson moved for summary judgment

arguing that he was entitled to immunity with respect to his failure to have Pearce remove his socks. He also asserted that any possible negligence claim arising out of his failure to complete the medical form – if not barred by immunity – would be unavailing owing to the fact that the incomplete medical form did not proximately cause Pearce's suicide. In response to Officer Tucker's motion for summary judgment, Appellant's theory of negligence shifted. While acknowledging that Officer Tucker was entitled to qualified immunity – and, thus, summary judgment – with respect to her original claim, Appellant asserted that a claim related to Officer Tucker's failure to "screen" Pearce remained viable. Appellant contended that Officer Tucker was not entitled to immunity with respect to the screening claim and that there existed a question of fact as to whether Officer Tucker could have prevented Pearce's suicide by having completed the "medical screening." In a brief opposing

_____

on the basis that his actions in no way contributed to Pearce's death; the trial court granted the unopposed motions. Like Glynn County, an action against Officer Tucker in his official capacity would be barred. See Donaldson v. Department of Transportation, 262 Ga. 49, 56 (2) (414 SE2d 638) (1992) ("While suits against public employees in their personal capacities involve official immunity, suits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity."). Accordingly, we address Appellant's claim against Officer Tucker with respect to his individual capacity.

4

summary judgment, Appellant clarified her position, specifying that she was not claiming that "a properly completed [screening] form would have prevented Pearce's death," but, instead, that a "medical screening" would have revealed Pearce's suicidal intentions and that the screening form was "merely a record of the screening." The trial court agreed, concluding that Officer Tucker was not entitled to immunity with respect to the screening claim and that a genuine issue of material fact existed with respect to whether Pearce's suicide could have been prevented had Officer Tucker completed "a proper medical screening." Officer Tucker appealed.

The Court of Appeals, without resolving the issue of immunity, addressed the substance of Appellant's claim and reversed the trial court. After recognizing the general rule regarding suicide – that it is an unforeseeable intervening cause of death which absolves the tortfeasor of liability except where the tortfeasor's wrongful act causes the injured party to kill himself during a rage or frenzy, or in response to an uncontrollable impulse[3] – the Court of Appeals concluded that there was no evidence that Pearce was in a rage or

---

[3] See <u>Harvey v. Nichols</u>, 260 Ga. App. 187 (2) (581 SE2d 272) (2003).

5

frenzy or had an uncontrollable impulse when he took his life and, thus, that Pearce's final act was an unforeseeable intervening cause of death which absolved Officer Tucker of liability. Tucker v. Pearce, 332 Ga. App. 187 (771 SE2d 495) (2015). This Court granted certiorari to address two questions: first, whether the general rule regarding suicide – on which the Court of Appeals' decision rests – applies in prisoner suicide cases, as was held in this case and in Harvey, even though other decisions of that court hold that the general rule does not apply where there is a special relationship between the decedent and the defendant, see Brandvain v. Ridgeview Institute, Inc., 188 Ga. App. 106, 112-118 (372 SE2d 265) (1988), and that such a special relationship exists between an officer and his prisoner, see Thomas v. Williams, 105 Ga. App. 321, 326 (124 SE2d 321) (1962); and second, whether the Court of Appeals otherwise correctly reversed the trial court's denial of summary judgment with respect to the medical-form claim. We conclude that Officer Tucker is entitled to qualified immunity with respect to the screening claim and, for this reason, that the Court of Appeals properly reversed the denial of summary judgment; we therefore need not address the first question, and we leave it to future cases for this Court or the Court of Appeals to reconcile the tension in the appellate case law that we

6

have identified.

The issue of Officer Tucker's immunity is a question of law and is reviewed de novo. See Cameron v. Lang, 274 Ga. 122 (1) (549 SE2d 341) (2001).

Qualified immunity, also known as official immunity, "'protects individual public agents from personal liability for *discretionary* actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption.'" (Emphasis added; citations omitted.) Cameron, 274 Ga. at 123. On the other hand, "a public officer or employee may be personally liable . . . for *ministerial* acts negligently performed or acts performed with malice or an intent to injure." (Emphasis added.) Id. at 123. Because there is no evidence that Officer Tucker "acted or failed to act with malice, wilfulness, or an intent to injure," the question before us is whether Officer Tucker's nonobservance of Department Policy 22.16.3 (E) was a failure to perform a ministerial or discretionary act. Grammens v. Dollar, 287 Ga. 618, 620 (697 SE2d 775) (2010).

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary

act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

(Citations omitted). Murphy v. Bajjani, 282 Ga. 197, 199 (1) (647 SE2d 54) (2007). "'The determination of whether an action is discretionary or ministerial depends on the character of the specific actions complained of, not the general nature of the job, and is to be made on a case-by-case basis.'" (Citations and punctuation omitted.) McDowell v. Smith, 285 Ga. 592, 594-595 (678 SE2d 922) (2009). "The single overriding factor is whether the *specific act from which liability allegedly arises* is discretionary or ministerial." (Emphasis added.) Golden v. Vickery, 285 Ga. App. 216, 218 (645 SE2d 695) (2007).

Policy 22.16.3 (E) required Officer Tucker to complete a screening form; arguably, compliance with the policy and completion of the screening form was ministerial in nature. See, e.g., Meagher v. Quick, 264 Ga. App. 639 (1) (594 SE2d 182) (2003) (responsibility of officers to complete a Family Violence Report as required by OCGA § 17-4-20.1 was ministerial duty). Here, however, is where Appellant's shifting theory of negligence muddles our analysis. While Appellant relies on the definite nature of the screening-form policy to argue that

8

Officer Tucker neglected a ministerial duty – and, thus, is not entitled to immunity – Appellant affirmatively stated in the trial court that she was not alleging that a properly completed form would have prevented Pearce's death. Instead, the gravamen of Appellant's negligence claim is that Officer Tucker failed to complete a "medical screening" – not the form itself – which, Appellant says, would have revealed Pearce's suicidal ideation; according to Appellant, the screening form is merely evidence of a more in-depth, though undefined, medical screening mandated by Policy 22.16.3 (E).[4]

"[A]n established policy requiring an official to take specified action in a specified situation . . . creates a ministerial duty on the part of the official to

---

[4] According to the dissent, the policy "creates a clear ministerial duty for officers to launch a medical screening that inquires into the health status of a detainee that is separate from an officer's duty to fill out the screening form." This conclusion is at odds with the plain language of Policy 22.16.3 (E). Notably, the policy twice states that an officer must "complete" or "fill out [a] *medical screening form*," identifies where an officer may find a blank copy of the required *form*, and instructs an officer to return the *completed form* to the on-duty supervisor. The plain language of the policy makes clear that an officer's ministerial duty is the completion of the medical form. Though the policy requires an officer to "inquire" as to the health of a detainee, that inquiry is exclusively connected to (and part and parcel of) the completion of the medical form, not some undefined medical screening envisioned by Appellant. As explained above, however, Appellant explicitly abandoned any claim that Pearce's suicide resulted from Officer Tucker's failure to complete the screening form.

perform the specified task" but only where that "policy [] mandates simple, absolute, and definite action and require[s] the execution of a specific task without any exercise of discretion." See Grammens, 287 Ga. at 620. See also Davis v. Effingham County Bd. of Commissioners, 328 Ga. App. 579 (2) (760 SE2d 9) (2014) (recognizing that the existence of a written policy does not automatically create a ministerial duty). While Policy 22.16.3 (E) dictates what health information should be gleaned from a detainee, it provides no guidance on how such a "medical screening" might be conducted. In contrast to the medical form – which Appellant has characterized as "simply a checklist and a record of inquiries" – Officer Tucker could have completed a "medical screening" in any number of ways, including simple observation. Telling, we think, is Appellant's speculation that, unlike the completion of the screening form, a properly conducted "medical screening" would have revealed Pearce's suicidal intentions, either through adept interview techniques or as a result of Officer Tucker's judgment that Pearce was in crisis. See Grammens, 287 Ga. at 620-621 (eye-protection policy required science teacher to exercise discretion in the implementation of the written policy and, thus, did not call for the performance of a ministerial duty). Under the circumstances of this case, the

10

duty as described by Appellant, even if mandated by policy, would be discretionary in nature; accordingly, Officer Tucker is entitled to qualified immunity and, thus, summary judgment.

Accordingly, the Court of Appeals' reversal of the trial court's denial of summary judgment, though based on a different rationale which we do not address, is therefore affirmed. See Precise v. City of Rossville, 261 Ga. 210 (3) (403 SE2d 47) (1991) ("A judgment that is right for any reason will be affirmed.").

Judgment affirmed. All the Justices concur, except Thompson, C.J., and Melton, J., who dissent.

S15G1310. PEARCE, et al. v. TUCKER.

MELTON, Justice, dissenting.

Because Glynn County Police Department Policy 22.16.3 (E) creates a clear ministerial duty for officers to launch a medical screening that inquires into the health status of a detainee that is separate from an officer's duty to fill out a screening form memorializing that medical screening, and because evidence exists to support the conclusion that Officer Tucker did nothing to fulfill his ministerial duty of initiating the required medical screening under the department policy, Officer Tucker is not protected from potential personal liability by qualified immunity in this case. Ms. Pearce made this specific, and correct, legal argument both in the trial court and here on appeal, and this argument was not somehow made less valid because Ms. Pearce "explicitly abandoned any claim that Pearce's suicide resulted from Officer Tucker's *failure to complete the screening form*." (Emphasis supplied.) Maj. Op. at 9, fn. 4. Again, and as explained more fully below, the ministerial duty that Officer Tucker may have failed to fulfill here, and that demonstrates that he is not protected from potential liability by qualified immunity, is separate from his

duty to fill out the screening form, and existed no matter what actions he took or failed to take with respect to filling out the form. I must therefore respectfully dissent from the majority's erroneous conclusion that Officer Tucker is protected from potential personal liability by qualified immunity in this case.

Glynn County Police Department Policy 22.16.3 (E) states:

Officers detaining a person must complete a screening form on the person before they are placed in the temporary holding cell and before they are transferred to another agency. The purpose of the screening is to determine whether medical attention is required of the person to be detained. The officer *must fill out the screening form noting and inquiring as to*:

1. The current health of the detainee
2. Medication taken by the detainee
3. Behavior, including state of consciousness and mental status and
4. Body deformities, trauma markings, bruises, lesions, ease of movement, etc.

From this rule, it is clear that an officer "*must*" make an "inquir[y]" into four specific areas relating to the health status of a detainee in connection with that officer's separate obligation to fill out a screening form that memorializes the required inquiry into the detainee's health status. While an officer may have a discretionary duty with respect to "how" he or she conducts such an inquiry once it is initiated, the department policy indicates that the officer has no

discretion whatsoever with respect to *whether* he or she initiates an inquiry in the first place. Indeed, regardless of how the inquiry is ultimately done, the officer "must" initially take the nondiscretionary action pursuant to Department Policy 22.16.3 (E) of "inquiring as to . . . [t]he current health of the detainee . . . [m]edication taken by the detainee. . .[b]ehavior, including state of consciousness and mental status and . . .[b]ody deformities, trauma markings, bruises, lesions, ease of movement, etc." In short, the rule makes the initial action of launching an inquiry a ministerial duty, and leaves the manner in which the inquiry is conducted, *once initiated*, a matter of discretion. See, e.g., Murphy v. Bajjani, 282 Ga. 197, 202 (3) (647 SE2d 54) (2007) ("[T]he *provision* of medical care [to an inmate by the sheriff] is a ministerial act because the duty [to provide medical care] is imposed by statute").

This shows the flaw in the majority's analysis. The majority has focused on the "discretion" that Officer Tucker would have had once he initiated a medical screening before first answering the question whether the evidence showed that he actually fulfilled his nondiscretionary duty to begin a medical screening in the first place. In this regard, the fact that Officer Tucker did not fill out the screening form at all to *memorialize* the alleged fulfillment of his

3

ministerial duty to conduct the required medical screening would constitute at least some evidence that he did *not* follow the police department policy of "inquiring as to . . . [Mr. Pearce's] current health.. . . [m]edication taken by [Mr. Pearce]. . .[b]ehavior, including state of consciousness and mental status and . . .[b]ody deformities, trauma markings, bruises, lesions, ease of movement, etc." By not doing anything at all to fulfill this ministerial duty of initiating the appropriate medical screening, Officer Tucker would "not enjoy official immunity from any liability resulting from his failure to perform that duty." Happoldt v. Kutscher, 256 Ga. App. 96, 100 (1) (567 SE2d 380) (2002).

Furthermore, the majority's attempt to criticize this dissent based on the plain language of Department Policy 22.16.3 (E) actually omits the plain language of the policy that directly contradicts the majority's analysis. The policy unambiguously states, "The purpose of the screening is to determine whether medical attention is required of the person to be detained." The policy, therefore, explicitly mandates a separate purpose-driven screening, and the majority is factually incorrect when it asserts that there is simply some "undefined medical screening envisioned by the Appellant" and that is "exclusively connected to the completion of the form." It is difficult to overstate

the magnitude of the majority's error. The majority misreads the policy to require only that the form be filled out and filed, without any obligation to complete the form accurately based on actual observation. This destroys the very purpose of the screening envisioned by the policy itself.

To the extent that Officer Tucker claims that he did conduct the required inquiry, but that he simply did not fill out the form memorializing that fact, such a claim would merely create an issue of fact to be resolved with respect to question of qualified immunity, but it would not show that Officer Tucker was entitled to immunity as a matter of law. Indeed, just because Officer Tucker claims that he initiated and conducted the required inquiry, that does not necessarily make it true. This is especially the case where, as here, the very reason that officers are required to fill out the screening form is to ensure that proper inquiries are documented. If an officer simply had to say that he or she conducted a required inquiry in order to be entitled to official immunity, but never had to document on the screening form that the required inquiry was actually made, this would defeat the entire purpose of the police policy requiring that inquiries "must" be documented on the screening form. I therefore agree with the trial court that Officer Tucker was not entitled to immunity in this case.

Because Officer Tucker is not entitled to immunity here, I also disagree with the majority's refusal to address the question whether the general rule regarding suicide as an intervening cause applies in prisoner suicide cases. With respect to this issue, I believe that this Court needs to explicitly resolve the tension between the cases indicating that the general rule does not apply in cases where a special relationship exists, but somehow still applies in cases involving the special relationship between an officer and his prisoner.

I therefore respectfully dissent from the majority opinion.

I am authorized to state that Chief Justice Thompson joins in this dissent.