*194 Miller, Judge,
dissenting.
Every day, our police officers do excellent work in the tough job of protecting and serving citizens and communities throughout the state of Georgia. Their work, often under difficult circumstances, is commendable. When a police officer, however, fails to follow his own department’s policies and procedures, this Court cannot condone such actions, especially where, as here, simply following his department’s policy may have prevented injury or death.
To prevail at summary judgment under OCGA § 9-11-56, Officer Tucker must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to Pearce, warrant judgment as a matter of law. See Home Builders Assn. of Savannah v. Chatham County, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003). Where there are outstanding issues of material fact to be decided, summary judgment is not proper. See id. at 245 (2). For this reason, I would affirm the trial court’s ruling.
On the night of Sunday, October 26, 2008, Christopher Pearce went to his pastor’s home with a gun. The pastor had noticed that something was bothering Pearce earlier that day at church service. Obviously concerned, the pastor called 911, and Glynn County Police Department Officers Tucker and Tomlinson responded and took Pearce into custody and down to the police station. Less than an hour after being taken to the police station and having been placed in a holding cell, Pearce was dead.
Police officers’ discretionary actions are covered by official immunity. See McDowell v. Smith, 285 Ga. 592, 593 (678 SE2d 922) (2009). This protection is essential so that they can confidently and expeditiously do their jobs. Police officers, however, have certain routine acts that are ministerial in nature. See id. (a ministerial act is one that is simple, absolute, and definite, requiring merely the execution of a specific duty). These acts are part of the routine duties that police officers are trained to perform each and every day. After taking someone into custody and placing him in a holding cell, Glynn County Police Department officers must, among other things, inquire into a detainee’s health, fill out a medical screening form and submit the completed form to their on-duty supervisor. Glynn County Police Department Order 22.16.3 (E) provides:
The officer must fill out the screening form noting and inquiring as to: 1. The current health of the detainee[;] 2. Medications taken by detainee [;] 3. Behavior, including state of consciousness and mental síaíi¿s[;] and 4. Body deformities, trauma markings, bruises, lesions, ease of movement, etc.
*195 The majority does not address the threshold issue of official immunity. The acts of inquiring into the detainee’s health, completing the medical screening form and giving the form to the on-duty supervisor were simple, absolute, definite, and mandatory acts, governed by clear Department policies and procedures. These were unquestionably ministerial acts.[23]
Viewing the record in the light most favorable to Pearce, there were numerous red flags that would have alerted a reasonable person that Pearce was suicidal.[24] In this case, Pearce went to his pastor’s home with a gun; Pearce was carrying two suicide notes, stating that he was in too much pain and seeking forgiveness; it was reported to police that Pearce was possibly on medication; and Officer Tucker undeniably knew that Pearce was acting abnormally.[25] Despite all these red flags, Officer Tucker failed to complete the medical screening form.
Contrary to the majority’s contention that the policy did not require Officer Tucker to talk to Pearce before completing the medical screening form, the policy specifically states that the officer must “inquire” as to the detainee’s health, behavior, medications, and markings. An inquiry is required by both the form and the policy on its face.[26] Here, there is no evidence that the officers investigated, inquired into or asked about any of these factors. Inquiring into Pearce’s health could have revealed his suicidal intentions.
The department’s medical screening policy is in place specifically to determine whether a person being detained has any physical or emotional problems that need medical attention. Given all the evidence in this case, Officer Tucker’s failure to fulfill his ministerial acts raises genuine issues of material fact for the jury as to whether Officer Tucker was negligent and whether the simple acts of inquiring into Pearce’s health, completing the medical screening form and *196 notifying the on-duty supervisor would have alerted the officers to provide some care that could have prevented Pearce’s death. See Meagher v. Quick, 264 Ga. App. 639, 644 (1) (594 SE2d 182) (2003) (where officers failed to fulfill the ministerial duty of completing a report, there was a genuine issue of material fact as to whether their failure to do so resulted in a child’s death).
Decided March 30, 2015
Reconsideration denied April 14, 2015
Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, Terry Readdick, Richard K. Strickland, Steven Blackerby, Aaron W. Mumford, for appellant.
The majority’s assertion that Pearce’s theory of causation is speculative and that the medical screening would not have revealed that Pearce was suicidal is misguided. This is not a plain and undisputed case where this Court can say, as a matter of law, that Pearce’s suicide could not have been prevented. It is not for this Court to usurp the place of the jury and determine causation. See Ogletree v. Navistar Intl. Transp. Corp., 245 Ga. App. 1, 3 (1) (535 SE2d 545) (2000) (issues of causation are for the jury to resolve and should only be determined as a matter of law in plain and undisputed cases). Harvey v. Nichols, which the majority relies upon, is not this case, on the facts or the law.[27] Moreover, Georgia has rejected the notion that suicide is per se an intervening act. See Brandvain v. Ridgeview Institute, 188 Ga. App. 106, 116 (3) (b) (372 SE2d 265) (1988).
Officers cannot ensure the safety of everyone in custody, and this case will not open the floodgates of litigation against them. Officers can, however, ascertain whether a detainee is at risk and take the necessary precautions. Public safety cannot stop at the jail house door, and police officers are not free to ignore the clear and specific requirements mandated by their department’s policies and procedures. Contrary to the majority’s opinion, this suicide might have been prevented if Officer Tucker had fulfilled his simple ministerial acts, which were intended to prevent exactly the type of harm that occurred here. Accordingly, this case cries out for a closer look by a jury.
*197 Bowen Painter, W. Andrew Bowen, Paul W. Painter III; Brennan Wasden & Painter, W. Richard Dekle, for appellees.

 See Clark v. Prison Health Svcs., 257 Ga. App. 787, 793-794 (4) (a), (b) (572 SE2d 342) (2002) (alerting shift supervisor of detainee’s mental health referral and performing mental health assessment were ministerial acts); see also 1983 Ga. Const. Art. I, Sec. II, Par. IX (d).

 Suicide warning signs include: making statements about suicide; getting the means to commit suicide, such as obtaining a gun; and withdrawing from social contact. See Mayo Clinic, Suicide and suicidal thoughts, Symptoms, http://www.mayoclinic.org/diseases-conditions/ suicide/basics/symptoms/con-20033954 (visited March 26, 2015).

 Here, the evidence showed that Officer Tucker and Officer Tomlinson reviewed the suicide notes and knew that Pearce was possibly on medication. Although the majority states that there is conflicting evidence as to these issues, any conflicts in the evidence certainly raise material issues of fact for the jury.

 Inquire means to ask for information, or to search into. See Merriam-Webster, http://www. merriam-webster.com/dictionary/inquire (visited March 30, 2015). Nothing in the policy suggests that the officers’ inquiry is limited to medications. In fact, the policy explicitly states that the officers must inquire into all four areas.

 In Harvey, this Court noted that, “[a]ll of the jail personnel who encountered [the decedent] testified that he acted in a normal fashion, was outgoing and under control, and readily spoke with the officers.... [The decedent] was calm and controlled and appears to have known what he was doing.” (Citation omitted.) Harvey v. Nichols, 260 Ga. App. 187, 193-194 (2) (581 SE2d 272) (2003). Given all the red flags in this case, Pearce’s demeanor, which Officer Tucker described as abnormal, is not determinative here.